The **CINCINNATI GAS & ELECTRIC COMPANY, et al., Plaintiffs,**

v.

**GENERAL ELECTRIC COMPANY, et al., Defendants.**

**No. C–1–84–0988.**

United States District Court,
S.D. Ohio, W.D.

Sept. 14, 1987.

Order Amending Order Denying Motion to Intervene Oct. 5, 1987.

Stephen Patsfall, Cincinnati, Ohio, for Proposed Newspaper Intervenors.

Robert G. Stachler, Cincinnati, Ohio, for Cincinnati Gas and Elec. Co.

Stephen E. Koziar, Dayton, Ohio, for Dayton Power and Light Co.

Michael P. Graney, Simpson, Thacher & Bartlett, Columbus, Ohio, for Columbus and Southern Ohio Elec. Co.

Kenneth R. Logan, Robert Cusumano, Simpson, Thacher & Bartlett, New York City, James N. Nowacki, James C. Munson, Chicago, Ill., for plaintiffs.

James R. Adams, Elizabeth K. Lanier, Cincinnati, Ohio, William A. Gordon, John M. Carroll, Harley Hutchins, Chicago, Ill., for General Elec. Co.

Bruce M. Allman, Cincinnati, Ohio, for Sargent & Lundy Engineers; Mary Ellen Hogan, Walter M. Jones, Frank M. Covey, Jr., Chicago, Ill., of counsel.

Steven P. Handler, David J. Seery, Dewey J. Caton, Kent S. Ray, Wm. R. Jentes, Chicago, Ill., pro hac vice, for Sargent & Lundy Engineers.

## ORDER

SPIEGEL, District Judge.

Before this Court is the joint motion of The Cincinnati Post, The Dayton Daily News and Journal Herald, The Columbus Dispatch, and The Cincinnati Enquirer to intervene, under Rule 24(b), Fed.R.Civ.P., in the above-captioned case for the limited purpose of challenging the closure of the summary jury trial [1] proceeding in this case and related motions (doc. 659), to which plaintiffs have responded in support of movant's motion (doc. 666), and defendant General Electric has responded in opposition (doc. 665), and movants have replied (doc. 672). Defendant Sargent & Lundy has not responded. For the reasons set forth below, we conclude that our closure order of June 28, 1987 should not be vacated and the proceeding, which is in progress, should remain closed to the press and public. We note, however, that we have ordered that the parties arrange for a copy of the transcript of the proceedings to be provided to the Court, which will be preserved in the event our Order is successfully challenged on appeal, and such transcript is being prepared as ordered.

Movants argue that the press and public have a First Amendment right under the U.S. Constitution to attend the summary jury trial proceeding. They contend that this proceeding "may be the only forum through which the public can learn about the facts underlying the crucial and burning public issues which are central to this case" (doc. 659 at 2). Movants rely on *In re The Knoxville News–Sentinel Co., Inc.,* 723 F.2d 470 (6th Cir.1983) for the proposition that the Court must afford the press an "independent opportunity" to state objections to a closure order. Defendant General Electric argues that movants' motion should be denied as untimely, where there is no legitimate excuse for delay, under the criteria set forth in *Stotts v. Memphis Fire Dep't.,* 679 F.2d 579, 582 (6th Cir.), *cert. denied,* 459 U.S. 969, 103 S.Ct. 297, 74 L.Ed.2d 280 (1982). Movants have offered their explanation for delay in their reply memo. We need not decide this issue, however, because we believe the issues raised by movants to be sufficiently serious to merit our consideration.

Turning to the substantive matter before us, the Supreme Court has recognized a qualified First Amendment right of access to judicial proceedings, including preliminary proceedings, in the criminal context. *Press–Enterprise Co. v. Superior Court, (Press–Enterprise II),* —— U.S. ——, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Movants point out that several courts have held that the right applies in civil cases as well. *See* doc. 659 at 9. Movants, in their reply, also direct our attention to *United States v. Presser, Application of National Broadcasting Co.,* 828 F.2d 340, 14 Media 2 Rep. (BNA) 1417 (6th Cir.1987).

In *Press–Enterprise II,* the Supreme Court held that a qualified right of access applied in criminal proceedings to a preliminary hearing which was conducted before a

---

1. For an explanation of the summary jury trial procedure, *see generally,* S. Arthur Spiegel, "Summary Jury Trials," 54 U.Cin.L.Rev. 829 (1986).

Magistrate in the absence of a jury. The Court considered two criteria in its determination: First, whether "there has been a tradition of accessibility to preliminary hearings of the type conducted in California" and, second, "whether public access to preliminary hearings as they are conducted in California plays a particularly significant positive role in the actual functioning process." *Press–Enterprise II*, 106 S.Ct. at 2741, 2742. The Court found that there was a long history of preliminary hearings before neutral and detached Magistrates being open to the public and that the absence of a jury—the long recognized "safeguard against the corrupt or overzealous prosecutor and against the complaint, (sic) biased, or eccentric judge"—is a circumstance which highlights the importance of public access to the proceeding. *Id.* at 2743. Concluding that a qualified First Amendment right of access attached to the proceeding, the Supreme Court adopted the California Supreme Court's interpretation of the California "access" statute, which was that the proceeding shall be closed upon finding "a reasonable likelihood of substantial prejudice" to the defendant. *Id.* (citation omitted). In addition, the Supreme Court found that the lower Court failed to consider alternatives short of complete closure. *Id.*

Guided by the Supreme Court, we first consider whether the qualified First Amendment right of access attaches to the summary jury trial proceeding in this case, *i.e.*, whether there has been a tradition of accessibility to such proceedings and whether access plays a significant positive role in the actual functioning of the process. On this first question, we concur in defendant General Electric's observation that there is no historically recognized right of access to summary jury trials in that this mechanism has been in existence for less than a decade. The summary jury trial was developed by United States District Judge Thomas D. Lambros of Cleveland, Ohio in 1980 as an alternative method of dispute resolution. Its primary goal has been described as a means of "decimat(ing) those barriers to settlement which lead to expensive and lengthy jury trials. Because it has the capacity to settle cases by enabling lawyers and litigants the opportunity to look at the strengths and weaknesses of their case through a 'looking glass' before trial, this program has been labeled a 'Force with a Focus.'" "The Summary Jury Trial," A Presentation of the Judicial Conference of the Sixth Circuit of the United States, Louisville, Kentucky, May 16, 1985. Chief Justice Warren Burger has commended the procedure as a useful approach to settlement and has noted that "(i)n a summary jury trial, attorneys present *abbreviated* arguments to jurors who render an *informal* verdict that guides settlement of the case." *Id.*, quoting the *1984 Year–End Report of the Judiciary* (emphasis added).

■ We believe that the Court has the power to conduct summary jury trials either under Rule 16, Fed.R.Civ.P., or as a matter of the Court's inherent power to manage its own cases. *See Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *Irvin E. Eash v. Riggins Trucking Co.*, 757 F.2d 557 (3rd Cir.1985). Rule 16(a)(5) provides that the Court may, in its discretion, direct the parties to appear before it for conferences for the purpose of "facilitating the settlement of the case." Rule 16(c)(7) indicates that the Court and parties may take action with respect to "the possibility of settlement or the use of extra-judicial procedures to resolve the dispute." And, Rule 16(c)(10) authorizes the use of "special procedures for managing potentially difficult or protracted actions ..."

The summary jury trial may be novel, but we are confident that it is nonetheless one member of an ever-growing family of settlement techniques. Thus, while the history of the summary jury trial is limited, there is general agreement that historically settlement techniques are closed procedures rather than open. Movants argue that while the "history of access" prong of the Supreme Court's mode of analysis in these cases is important, the Court has found the "crucial" question to be the second prong of the analysis, *i.e.*, "whether access to a particular government process

is important in terms of that very process" ·(*see* doc. 659, at 11, *citing Richmond Newspapers, Inc.*, 448 U.S. at 589, 100 S.Ct. at 2834 (Brennan, J., concurring) and *Globe Newspaper Co. v. Superior Court* (1982), 457 U.S. 596, 605, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248).

Defendant General Electric directs our attention to *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed. 2d 17 (1984), which holds that there is no First Amendment Right of access to pretrial civil discovery material, where such material has not been historically available to the public, and also to *In re Courier Journal*, 828 F.2d 361 (6th Cir.1987), which holds that there is no First Amendment right of access to "the fruits of discovery" under a *Seattle Times* analysis. Movants argue that *Application of National Broadcasting, supra,* is the more relevant Sixth Circuit case in that the Court recognized the right of access to documents and pretrial proceedings relating to a motion to disqualify the judge for bias and conflicts of interest by litigants' attorneys. We note, however, that the Court also found such matters to be traditionally open to the public.

Movants argue that access to this proceeding is important in terms of the very process of this proceeding, on the grounds that the parties are given the option to stipulate that the verdict in the summary proceeding be binding on the parties, further, that the summary jury trial may result in the settlement of the case so that the "sole occasion" for public observation of the justice system's role in this type of dispute resolution, in a case involving issues of paramount public interest concerning nuclear power plants will be lost; and, finally, the summary jury trial will "operate and proceed like a trial," *i.e.*, citizens are summoned for and participate as jurors in a case presided over by a judge and where evidence will be presented and a verdict rendered.

In their reply, movants focus on the similarities between a summary jury trial and a trial on the merits and take issue with General Electric's characterization of the proceedings as one of settlement by indicating the ways in which summary jury trials differ from traditional settlement conferences. Thus, by analogizing to a trial on the merits, rather than settlement procedures, movants argue that General Electric's contention that there is no "tradition of accessibility" for such proceedings is incorrect, and that public access to the proceedings is as important to the summary jury trial process as it is to an actual trial.

We are in complete agreement with movants that the issues central to the merits of this case present matters of paramount public concern. And, as an aside, we note that were the matter one purely within the Court's discretion, we would advocate opening the procedure to the press and public, in the belief that all parties, as well as the public, would be well-served by an airing of the issues.

■ However, the Court conducts summary jury trials with the cooperation of the parties. The history of General Electric's concerns regarding this procedure are a matter of public record, as well as our Order closing the summary jury trial in response to these concerns. Regardless of our views on the general merits of opening the procedure to the press and public, the only question before us is whether the Constitution mandates that the procedure be open to the press and public. And, as indicated above, we conclude it does not.

We find that movants' contentions, as outlined above, exalt form over function. The summary jury trial, for all it may appear like a trial, is a settlement technique. It was designed as such and was so presented by the Court to the parties in this case. Movants contend that the provision of our Order which allows the parties to stipulate that the verdict rendered by the summary jury trial be binding transforms the proceeding into a "secret trial." First, General Electric correctly points out that the parties in this case have not so stipulated. And, we are not convinced that our provision for such a stipulation is so different from a settlement agreement so as to change the character of a summary

jury trial from that of settlement technique to that of a trial on the merits. However, in an abundance of caution, on our own initiative, which is unopposed by the parties in this case, we hereby vacate paragraph 20 of our June 28 Order relating to counsels' ability to stipulate that a consensus verdict be deemed a final determination of the merits.

Movants next contend that the summary jury trial may present the "sole occasion" for the public's observation of the judicial system's role in this type of dispute resolution and that the public will miss the opportunity to hear the arguments of each side as they relate to an issue of paramount public concern. While this may be true, such results will always follow in a case that settles prior to trial on the merits. Thus, should this case settle, either pursuant to more traditional settlement techniques or the summary jury trial, the public would be precluded from hearing the actual evidence in the case. As defendant General Electric argues, the fact that the summary jury trial is a more formal process than the traditional settlement conference is not determinative of the existence of a First Amendment right of access.

We note that while movants have focused on the similarities between a trial on the merits and a summary jury trial, the differences are manifold. Because the purpose of the summary jury trial is settlement by means of giving the parties insights into the strengths and weaknesses of their case, the proceedings are markedly different. Specifically, in this case, the parties have been given seven (7) days in which to present a summary of the evidence in the case, while trial on the merits is anticipated to last for many months. As a matter of necessity, not all of the evidence that would be presented at trial will be covered by the summary proceeding. No live testimony and, thus, no testing of credibility or cross-examination of witnesses, is permitted. Moreover, given the flexibility of this procedure, the summary jury trial in this case deals with only selected issues; others, that will be tried on the merits, if the case goes to trial, are simply omitted from this procedure for the sake of simplicity and to focus on those issues that appear to be central to any meaningful settlement discussions in this case.

The heart of movants' final contention is that the procedure is trial-like to the extent that it is judicially supervised and involves jurors; movants conclude that the summary jury trial is the functional equivalent of a trial. We do not dispute the fact that we select jurors from the community to effectuate the goals of the summary jury trial. This fact is a distinguishing element as movants point out. However, contrary to movants' understanding, the jury is advised from the outset of the proceeding that they are participating in a dispute resolution procedure. They are informed that they will be helping the parties resolve their disputes by appraising the strengths and weaknesses of the case, as well as by assessing the value of the case. In addition, because of the flexibility of this procedure, we are able to ask the jury to undertake considerations directed toward settlement of the case that would never occur in an actual trial. Specifically, the jury is asked not only to consider questions of liability and damages, but the jury is to *assume* liability and assess damages, if any. And, the verdict is advisory. Thus, we reject movants' motion that the *"Raison d'etre"* of the summary jury trial is "to present the parties' case to an authentic jury" rather than to achieve settlement. We readily agree that we attempt to have the proceeding mimic trial procedures to the degree possible, but this effort does not detract from the stated goal of settlement—to the contrary, the realism of the procedure is key to successful functioning.

Similarly, we are unpersuaded by movants contrasting the summary jury trial and "typical" settlement conferences. Summary jury trials are by their nature atypical. The summary jury trial and other settlement concepts have been developed in order to accommodate complex litigation for which the typical settlement techniques are often not well-suited. In addition to movants arguing that it is incorrect to describe the summary jury trial as a pretrial settlement conference, they also attach

some importance to the fact that the "final pretrial conference" has occurred in this case. First, we consider the summary jury trial to be a pretrial proceeding; we recognize that it is not a "conference" in the traditional sense. Second, we want to dispel what appears to be movants' misunderstanding that the final pretrial conference in this case relates to the summary jury trial. The final pretrial conference in this case, as in all cases, relates to the trial on the merits. The summary jury trial is the final settlement technique undertaken by the Court before trial on the merits. The final pretrial conference and the final pretrial order resulting therefrom delinate the issues of fact and law that must be resolved in the litigation. Finally, it should be remembered that these proceedings are nonbinding and, other than fostering the hope of settlement, they have no effect on the merits or outcome of this case. Viewed in these terms, we find little force to movants' contention that access will assure that these proceedings will be conducted fairly.

To the extent there is concern that any proceeding be fair, we do, as movants are aware, have a jury participating in this proceeding. So, while we are of the opinion that the presence of a jury does not trigger a First Amendment right of access, we do find that this public participation does ameliorate movants' concerns to the extent the jury will act as the "inestimable safeguard" against unfairness, as noted by the Supreme Court in *Press–Enterprise II.*

For all of the above reasons, we conclude that summary jury trials, as recognized settlement techniques, are in a class of proceedings that have been closed to the public to best effectuate their purposes. Thus, the "tradition of access" component of the *Press–Enterprise II* analysis has not been met. Similarly, we conclude that public access to summary jury trials does not "play a particularly significant positive role in the actual functioning of the process," as required in *Press–Enterprise II* in that the proceeding is non-binding and has no

effect on the merits of the case, other than to promote settlement.

Therefore, we find that the qualified First Amendment right of access to certain judicial proceedings does not attach to this summary jury trial. Accordingly, movants' motion (doc. 659) to intervene for the limited purpose of challenging the closure of the summary jury trial in this case is denied.

SO ORDERED.

## ORDER AMENDING ORDER DENYING MOTION TO INTERVENE

Before the Court is the motion to amend the September 14, 1987 Order of this Court (doc. 676) wherein we denied movants' motion to intervene in the above captioned case for the limited purpose of challenging the June 28, 1987 Order [1] of this Court (doc. 482), closing the summary jury trial in this case. Movants request an amendment to the September 14 Order to include our Orders sealing the jury list and prohibiting the jurors serving on the summary jury trial from discussing the proceeding with the press or public after the conclusion of the summary jury trial. Movants further request that we unseal that portion of the transcript of the summary jury trial, wherein we issued the Order restricting the communications of the jurors. Finally, movants request that the Court issue an Order at this time that the jury list be unsealed effective immediately. Movants indicate that they intend to appeal our September 14 Order and, because time is of the essence, we shall rule on the instant motion without delay.

To assist movants in their efforts to perfect their appeal of our September 14 Order and because we believe there is no compelling reason not to provide movants with the substance of our Order restricting juror-communication, we undertake, *ex parte*, to amend our previous Order in the following manner.

---

1. The docket sheet in this case reflects that the date of the Order closing the summary jury trial

proceeding to the public is June 26, 1987.

First, we amend our prior Order to include the Order issued on September 21, 1987, by this Court at the close of the summary jury trial restricting juror communication with the press or public until the conclusion of this litigation. Because this Order was issued orally from the Bench, we have, per movants' request, appended a copy of the transcript of this portion of the summary jury trial proceedings to this Order and incorporate the substance of our Order restricting jury communication as an amendment to our September 14 Order.

Movants next request that we amend our September 14 Order to include our Order sealing the jury list. We do not believe the Court issued a specific order sealing this list, which leads us to conclude that the office of the Clerk did so, knowing that the Court had issued an Order closing the summary jury trial to the public. In order to clarify this matter and to ensure that all matters in controversy are appropriately before the Court of Appeals, we amend our September 14 Order to include the following: We Order that the list identifying prospective jurors on the panel for the summary jury trial, as well as those who actually served on the summary jury trial, shall remain sealed until the conclusion of this litigation. To disclose their identity at this time may defeat the confidentiality of the jury's decision and would be inconsistent with our Order closing the proceedings to the public. Therefore, movants' motion to immediately unseal the jury list is hereby denied.

Accordingly, we amend our September 14 Order to include orders restricting jury communication with the press and public until the conclusion of this litigation and sealing the jury list. Moreover, we have unsealed that portion of the transcript from the summary jury trial that contains our Order and comments to the jury concerning the restriction on their communication. And, in keeping with the above, we have denied movants' request for an Order unsealing the jury list at this time.

SO ORDERED.

## APPENDIX

Cincinnati, Ohio

Monday, September 21, 1987

(The Court's Order to the Summary Jury, re: Verdict.)

EXCERPTS OF PROCEEDINGS BEFORE THE HONORABLE S. ARTHUR SPIEGEL AND SUMMARY JURY TRANSCRIPT ORDERED BY: Stephen J. Patsfall, Esq.

APPEARANCES:

| | |
|---|---|
| For CG & E: | Robert Stachler, Esq. and co-counsel |
| For ColSOE: | Kenneth Logan, Esq. and co-counsel |
| For Dayton P & L: | James Nowacki, Esq. and co-counsel |
| For G.E.: | Bruce Hoff, Esq. and co-counsel |
| For Sargent–Lundy: | Frank Covey, Esq. and co-counsel |
| Law Clerk: | Joan Heffernan, Esq. |
| Courtroom Clerk: | Paul J. Schulz, III |
| Court Reporter: | Mary Ann Ranz |

MONDAY, SEPTEMBER 21, 1987

\* \* \*

THE COURT: Let me explain what we do now. After I excuse you and discharge you for the work you performed, I ask the parties—those out of town—to stay in town and take your advisory verdict that has been based on the liability and the value of the claims, and see what they can do to see if they can find a way to resolve this knotty problem, this litigation. It's not over for them. It's not over for the Court, because if we can't do it, the case is scheduled to go to trial in January. Like I said, I have a special instruction for you to explain why you shouldn't talk about this case.

Now that the Summary Jury Trial is over, there is one more matter I would like to discuss with you, and that is the confidentiality of these proceedings. First of all, I would like to say the press has attempted to have the trial open for the public. The interest of the press and the public in this case is understandable. Any case that involves the construction of a nuclear power plant raises legitimate con-

cerns and interest to the public. However, the exercise you and I and the parties have undertaken over the past two weeks is a dispute resolution technique, as I mentioned to you I think at the very beginning when we explained this process. In other words, your findings on liability and damages provide the parties with information that I hope will help them to settle their dispute. In simpler cases, it is often enough to hold a settlement conference in my chambers where the parties and the lawyers can discuss the matter and find a way to resolve their disputes. But such settlement proceedings, of course, are private and confidential.

In a complex case, such as the one you have been working on right here, it is not so easy for the parties to assess the strengths and weaknesses of their case or the value of the claims, and often the lack of this kind of information makes meaningful settlement conferences impossible.

The Courts, out of concern that the barriers to settlement of complex cases result in great costs to the legal system because a case like this can go on for months on end—other litigants are at the courthouse door and want their cases tried and their cases get backed up which causes problems for everyone—have devised a range of settlement techniques to assist the parties in resolving disputes without going to trial, if at all possible.

The Court undertakes the Summary Jury Trial with the cooperation of the parties. We leave the decision as to whether the Summary Jury Trial should be open or not to the parties. In this case, the exercise was undertaken on the premise the Summary Jury Trial proceedings would be closed and I honored their request.

The concern among some of the parties is that if the contents or the results of your decision became public, the prospects of the settlement might be diminished and might increase the difficulty of selecting a jury in the future when this case comes up for trial in a couple of months.

I want to stress that if there is no settlement in this case, however, that the actual trial where there is live testimony, which will last for some length of time as I mentioned, will be open to the press, of course, and will be thoroughly reported to the public and there is no concern that if it is tried in the future the public won't know. At that time you'll be free to talk about what occurred at this time, but not until that time. So, since it is within my authority to order you not to discuss this case or your verdict, I'm going to ask—I order that you not discuss it with anyone when you leave this courtroom.

Now, after all of your work, I'm sure you share the Court's and parties' interest in seeing that this matter is resolved. You contributed a great deal to that process already. And if this case does not settle and a jury verdict is rendered in this case on the merits, you'll be free then to discuss what occurred in these past few weeks.

On behalf of everybody, we would like to thank you for your services here.

\* \* \*

EXCERPTS OF SUMMARY JURY
TRIAL CONCLUDED