Bill E. McKAY and Harry
Williams, Plaintiffs,

v.

ASHLAND OIL, INC., Ashland Petroleum
Co., Ashland Development, Inc., John
R. Hall, Robert T. McCowan, Richard
W. Spears, Orin E. Atkins, Defendants.

Civ. A. No. 84–149.

United States District Court,
E.D. Kentucky,
Ashland Division.

April 8, 1988.

John McCall and David Tachau, Brown, Todd & Heyburn, Louisville, Ky., for plaintiff, William E. McKay.

Warren Anthony Fitch and Ken Robinson, Kohlman & Fitch, Washington, D.C., for plaintiff, Harry D. Williams.

William E. Johnson and Robert M. Watt, III, Stoll, Keenon & Park, Lexington, Ky., for defendant Ashland Oil, Inc., John R. Hall, Robert T. McCowan, Richard W. Spears.

Ben L. Kessinger, Jr., Lexington, Ky., for defendant Ashland Oil, Inc.

David R. Monohan, Woodward, Hobson & Fulton, Louisville, Ky., John E. Jenkins, Jr., Jenkins, Fernstermaker, Krieger, Huntington, W.Va., for defendant Orin E. Atkins.

## OPINION

BERTELSMAN, District Judge.

This court is called upon to decide whether mandatory summary jury trials are a valid pretrial settlement procedure.[1] A summary jury trial was set in this case

---

1. In an effort to keep this opinion to a reasonable length, I will assume the reader has some knowledge as to how summary jury trials work. For those who do not, may I suggest the articles by Judges Lambros and Posner, *infra,* notes 6 and 8. *See also,* Gwin, *Summary Jury Trial: An Explanation and Analysis,* 52 Kentucky Bench & Bar No. 1, at 16 (Winter 1987–88).

over the objection of the plaintiffs. A motion for reconsideration of that setting was filed by plaintiffs promptly after the decision of the United States Court of Appeals for the Seventh Circuit in *Strandell v. Jackson County*, 838 F.2d 884 (7th Cir. 1988).

In *Strandell*, the Seventh Circuit held that a district court could not require the parties to participate in a mandatory summary jury trial. The court held that it could find no authority for making such a procedure mandatory either in the inherent power of the court or in the Federal Rules of Civil Procedure. As will be discussed below, this court is in a somewhat stronger position than the trial court in *Strandell* because of our local rule authorizing compulsory summary jury trials. Nevertheless, the court finds itself in respectful disagreement with the Seventh Circuit on the inherent power and Federal Rules issues, as will also be discussed.

### BACKGROUND

This case is at heart a wrongful discharge case, but to call it that is to deprecate its complexity which is truly labyrinthine. Briefly, plaintiffs McKay and Williams are former officers of defendant Ashland Oil Corporation. They allege that for several years Ashland conducted the procurement phase of its operations in part by illegally bribing officials of Middle Eastern countries. Such bribes are prohibited by the Foreign Corrupt Practices Act. 15 U.S.C. § 78dd–1. Plaintiffs charge that these bribes were paid in a surreptitious manner disguised as investments. For instance, one of the contentions is that Ashland made an investment in a chrome mine that was not really an investment but a disguised bribe to the proprietor of the mine, who was allegedly a foreign official.

Plaintiffs further charge that when they refused to participate in these illegal activities and refused to cooperate in the cover-up that necessarily resulted, they were discharged from their employment.[2] The case is set for a six-week trial if the summary jury trial and other efforts of the court do not result in settlement. The summary jury trial will be limited to five days.

### EFFECT OF LOCAL RULE

This case stands on a somewhat different footing than *Strandell, supra,* because of Local Rule (LR) 23 of the Joint Local Rules for the United States District Courts of the Eastern and Western Districts of Kentucky, which reads:

**RULE 23**

**ALTERNATE METHOD OF DISPUTE RESOLUTION**

A judge may, in his discretion, set any civil case for summary jury trial or other alternative method of dispute resolution.[3]

This local rule was adopted, of course, pursuant to the authority of F.R.Civ.P. 83, which provides:

**Rule 83. Rules by District Courts**

Each district court by action of a majority of the judges thereof may from time to time, after giving appropriate public notice and an opportunity to comment, *make and amend rules governing its practice not inconsistent with these rules.* A local rule so adopted shall take effect upon the date specified by the district court and shall remain in effect unless amended by the district court or abrogated by the judicial council of the circuit in which the district is located. Copies of rules and amendments so made by any district court shall upon their promulgation be furnished to the judicial council and the Administrative Office of the United States Courts and be made

---

**2.** A more detailed statement of the background may be found in the Opinion in the related shareholder derivative action, *Howes v. Atkins,* 668 F.Supp. 1021 (E.D.Ky.1987).

**3.** Although some argument might be made that this rule is ambiguous with regard to whether a summary jury trial may be mandatory, we are unusually fortunate in having access to the orig-

inal intent of the drafters in resolving this ambiguity since I was the drafter. The court has personal knowledge, therefore, that the intent was to afford trial judges full authority to employ summary jury trials and other methods of alternate dispute resolution. The local rule is in the form suggested by Judge Lambros in his article cited in note 6, *infra.*

available to the public. *In all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act.* (emphasis added).

There can be no doubt that LR 23, *supra*, is valid under F.R.Civ.P. 83, since far greater intrusions into the autonomy of trial lawyers and parties have been upheld under the aegis of Rule 83. Further, the United States Supreme Court has recently commented that district courts have the power to enact local rules necessary for the courts to conduct their business. *Frazier v. Heebe*, —— U.S. ——, 107 S.Ct. 2607, 2611, 96 L.Ed.2d 557 (1987).

Directly in point is the Sixth Circuit decision in *Rhea v. Massey–Ferguson, Inc.*, 767 F.2d 266 (6th Cir.1985). There the court upheld Local Rule 32 of the Eastern District of Michigan authorizing the district judge to refer certain cases to mandatory mediation. Further, the Michigan rule provided for the imposition of extra costs or the failure to recover normal costs if a party did not better the evaluation of the mediators by ten percent.

In *Rhea*, the trial court had imposed $5,400 in extra costs on the defendant under the local rule. The appellate court first held that the defendant's right to trial by jury under the Seventh Amendment was not violated by the mandatory mediation procedure since the case ultimately did go before a trial jury which rendered the final binding verdict. 767 F.2d at 268–69.

Turning to objections made under the Federal Rules of Civil Procedure, the appellate court stated:

"Massey–Ferguson also characterizes Local Rule 32 as violating numerous Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 83 authorizes district courts to 'regulate their practice in any manner not inconsistent with these rules.' The challenged local rule is not inconsistent with Rule 38(b) merely because it interposes an additional step between the jury demand and trial. Nor does the Local Rule require two demands

for a jury trial in violation of Rule 39(a). Nor is Local Rule 32 inconsistent with Rules 53 or 72–75, governing referral to masters or magistrates. The mediation panel merely issues a settlement evaluation that has no force unless accepted by the parties. In sum, no flaw requiring this Court to intervene in the district court's practice under Local Rule 32 has been raised in the present suit." 767 F.2d at 269.

■ As the Sixth Circuit also pointed out, many cases have upheld routine referral of cases to mandatory nonbinding arbitration. *See, e.g., Davison v. Sinai Hospital of Baltimore, Inc.*, 462 F.Supp. 778 (D.Md.1978), *aff'd*, 617 F.2d 361 (4th Cir. 1980). *See also, New England Merchants Nat'l Bank v. Hughes*, 556 F.Supp. 712 (E.D.Pa.1983); *Kimbrough v. Holiday Inn*, 478 F.Supp. 566 (E.D.Pa.1979). A summary jury trial is essentially nonbinding arbitration with an advisory jury instead of arbitrators.

Some appellate courts have also backed up the trial judges in the trenches by upholding local rules providing for the imposition of costs as a sanction for last-minute settlements entered into after the taxpayers have incurred the expense of bringing in the jury. *White v. Raymark Industries, Inc.*, 783 F.2d 1175 (4th Cir.1986); *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557 (3rd Cir.1985) (en banc).

The Supreme Court of the United States upheld a local rule providing for civil jury trials by juries of six, at a time when this was an innovation. *Colgrove v. Battin*, 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973). The Third Circuit's interpretation of *Colgrove* was as follows:

"More recently the Supreme Court has clarified the role of local rules in achieving procedural change. In *Colgrove v. Battin*, 413 U.S. 149, 93 S.Ct. 2448, 37 L.Ed.2d 522 (1973), it upheld the validity of a local rule providing for a jury of six in a civil trial. The Court declared that the 'requirement of a six-member jury is not a "basic procedural innovation." ' The Court went on to define the ' "basic procedural innovations" to which *Miner*

referred' as 'those aspects of the litigatory process which bear upon the ultimate outcome of the litigation.' *Id.* at 164 n. 23, 93 S.Ct. at 2456 n. 23. A reasonable monetary sanction on an errant attorney is not a procedural innovation beyond the reach of a local rule since it is not outcome-determinative in the sense suggested by the Supreme Court." [4]

A summary jury trial is far less intrusive into the independence of the trial lawyer or litigant than the local rules upheld by the above authorities. No presumption of correctness attaches to the verdict of the summary jury, nor is any sanction imposed for failure to accept its advisory verdict. It is merely a useful settlement device. It may require an expenditure of time and preparation but so do pretrial orders, memoranda, conferences, marking of exhibits, etc. In no way is the summary jury trial "outcome-determinative" under the Supreme Court's *Colgrove* test.

■ Therefore, this court concludes that there is no doubt concerning the validity of its local rule allowing a trial judge to require participation in summary jury trials.

Nevertheless, because of the publicity accorded the recent Seventh Circuit opinion and the shadow cast upon the summary jury trial procedure by it, I feel compelled to offer some additional comment. This is done in a spirit of furthering constructive debate on a device which I have used several times and believe to be an effective tool in achieving settlements especially in protracted cases.[5]

## THE STRANDELL OPINION: LAMBROS' GODCHILD GETS A BUM RAP

The conventional wisdom is that the truly creative are unappreciated in their life-

times. It seemed for a while that Judge Lambros was to be spared this unhappy fate with regard to his invention of the summary jury trial.[6]

When Judge Lambros first told me about the summary jury trial in 1982, I thought it was one of the few truly original developments in civil procedure since 1938. I invited Judge Lambros to present a discussion of it at our upcoming Sixth Circuit District Judges' Workshop, which I chaired. He did so, and his ideas were well received by his fellow judges. Subsequently, Judge Lambros appeared at many other seminars and workshops for the bench and bar, and his new method received wide acceptance. Many judges began using summary jury trials, some in a volume of cases, some more selectively.[7]

In short, summary jury trials enjoyed rhapsodies of acclaim until a sour note was sounded by Judge Posner in an article in the University of Chicago Law Review.[8]

Judge Posner did express some reservation about a trial court's authority for holding summary jury trials, in that the procedure was not expressly authorized by F.R. Civ.P. 16 (pretrial conferences) or 39(c) (advisory juries). He did not conclude definitively that mandatory summary jury trials were beyond a trial court's powers, however.[9]

Judge Posner's main criticism was that the effectiveness of summary jury trials has not been scientifically verified. Further, he was concerned because statistics from districts employing the device were not markedly different with regard to the number of settlements and length of time for bringing cases to trial than those in

---

**4.** *Eash, supra,* 757 F.2d at 569.

**5.** The discussion will also aid appellate review in that it further demonstrates that Local Rule 23 is not inconsistent with the Federal Rules of Civil Procedure, should an appellate court reach that issue.

**6.** *See* Lambros, *The Summary Jury Trial and Other Alternative Methods of Dispute Resolution,* 103 F.R.D. 461 (1984).

**7.** *See* letters appended to Lambros article, *supra.*

**8.** *See* Posner, *The Summary Jury Trial and Other Methods of Alternative Dispute Resolution: Some Cautionary Observations,* 53 U.Chi.L.Rev. 366 (1986).

**9.** *Id.* at 385–86.

other districts.[10]

Judge Posner readily acknowledged, however, that his study was "very crude," because the statistics were not compiled for the purpose of evaluating summary jury trials.[11] Judge Posner's conclusion was that summary jury trials were very costly and intrusive on prerogatives of trial lawyers and litigants for a method whose effectiveness could be scientifically verified, if at all, only with great difficulty. His conclusions are, I believe, fairly summarized in the paragraphs quoted in the margin.[12]

In *Strandell, supra,* the Seventh Circuit went Judge Posner one better, holding that a trial court was without power to hold a summary jury trial over a party's objection. The court reversed the district court's opinion to the contrary.[13]

No local rule such as that in effect in this district was involved. Therefore, the court turned directly to the inherent power of the court and the Federal Rules of Civil Procedure governing pretrial conferences. The court found that summary jury trials were

not authorized under the inherent power theory or by Rule 16 and further that they "affect seriously the well-established rules concerning discovery and work-product privilege." [14]

Respectfully, in the opinion of this court the trial court opinion expresses the better view. The trial court relied on the following provisions of Rule 16:

"**Rule 16. Pretrial Conferences; Scheduling; Management**

"**(a) Pretrial Conferences; Objectives.** In any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial for such purposes as

\*   \*   \*   \*   \*   \*

"(5) facilitating the settlement of the case.

\*   \*   \*   \*   \*   \*

"**(c) Subjects to be Discussed at Pretrial Conferences.** The participants at any conference under this rule may consider and *take action* with respect to

\*   \*   \*   \*   \*   \*

---

**10.** *Id.* at 375.

**11.** *Id.* at 377.

**12.** "But actually the summary jury trial is unlikely to affect the settlement *rate* even if, as I have been assuming, it increases the probability of settling each and every case subjected to the device. Judges have only so much time to devote to civil trials, given the pressure of their other responsibilities, in particular the pressure that the Speedy Trial Act exerts to give priority to criminal trials. Faced as most federal district judges are with many more cases filed in a year (more than 500 in the busier districts) than they can try (perhaps 40 on average, of which almost half would be criminal cases), they must, to equilibrate supply and demand, delay trials, refer disputes to magistrates, and put pressure on the parties to settle. If the summary jury trial settles some cases that would otherwise be tried, other cases will advance in the queue; or the judge will put less pressure on the parties to those cases to settle; or fewer cases will be referred to magistrates. Whatever happens, there will be the same number of trials. The summary jury trial is a substitute not for real trials but for alternative methods of pushing the parties to settle, and it is a costly substitute.

"Of course, for those who believe the federal courts are being underutilized, any procedure that has a fair chance of raising the settlement

rate in these courts, thereby making room for new cases, will be welcome. That is not my view, though it would take me too far afield to show why the federal courts have too much rather than too little business; it is not the view of the advocates of summary jury trial, either. They accept, regretfully or resignedly, rather than welcome, the prospect of an ever-expanding federal caseload. They merely hope to process cases more rapidly by reducing the fraction of cases that are tried. They are like highway engineers, for whom the natural solution to highway congestion is to build more and wider highways. The advocates of more efficient machinery for expediting case flow have not shown equivalent interest in measures to reduce the overall demand for federal judicial services, as by raising the jurisdictional minimum amount in controversy in diversity cases, or raising filing fees above their present ridiculously low levels, or returning some legal responsibilities to state courts. It is in those directions, I believe, that the only lasting reforms lie. It is merely a detail that the summary jury trial, despite the enthusiasm it has generated, remains problematic even on its own rather too limited terms of reference." *Id.* at 388–89.

**13.** *See Strandell v. Jackson County,* 115 F.R.D. 333 (S.D.Ill.1987).

**14.** *Strandell,* 838 F.2d at 888.

"(7) the possibility of settlement or the use of *extrajudicial procedures* to resolve the dispute;

\* \* \* \* \* \*

"(10) the need for *adopting special procedures* for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems; and

"(11) such other matters as may aid in the disposition of the action." (emphasis added).

In the view of this court, a trial court's requiring participation in a summary jury trial is all but expressly authorized by these provisions of Rule 16. Certainly the summary jury trial procedure is not in conflict with these provisions, which authorize the trial court to "take action" with regard to "the use of extrajudicial procedures," special procedures for complex cases, and "such other matters as may aid in the disposition of the action." Further, Rule 16(f) authorizes the court to compel attendance at pretrial conferences, and this has been held to apply to settlement conferences.[15] In addition, F.R.Civ.P. 83 provides in its last sentence:

"In all cases not provided for by rule, the district judges and magistrates may regulate their practice in any manner not inconsistent with these rules or those of the district in which they act."

Also, summary jury trials may be used as an extended pretrial conference to clarify the issues for the trial judge. Plainly Rule 16 would authorize the trial judge to hold a final pretrial conference in the form of a condensed trial. In a summary jury trial, the court just has laymen sit in and give their reactions.

Most persuasive to this court, however, is the fact that the Judicial Conference of the United States has passed a formal resolution endorsing the experimental use of summary jury trials as a potentially effective means of promoting settlements. The Judicial Conference was well aware that summary jury trials were not expressly authorized by the Civil Rules, and language limiting the resolution to summary jury trials held "only with the voluntary consent of the parties" had purposely been deleted from a previous draft.[16]

The belief of the Judicial Conference that mandatory summary jury trials were authorized by the Federal Rules of Civil Procedure seems apparent.

The concern of the Seventh Circuit with violation of privilege or protection of work product also seems misplaced. Modern federal courts require a comprehensive pretrial order, exchange of witness lists and summaries of anticipated testimony, and the listing and marking of all exhibits. Because a summary jury trial is based on facts disclosed by discovery and is to be a synopsis of the actual trial, it is hard to see how anything would be disclosed by a summary jury trial that would not be disclosed at the real trial and would not already be contained in the pretrial order, which is also an overview of the real trial. If the Seventh Circuit means that a summary jury trial prevents a litigant from saving some juicy tidbit as a surprise for the trial a la Perry Mason, the pretrial orders used by most courts are supposed to do the same thing. Trial by ambush has long since been eliminated from the federal system.

■ Further, mandatory summary jury trials would seem to be within the inherent power of the court.[17]

■ Therefore, this court respectfully disagrees with the appellate opinion in *Strandell* and adopts the views of the *Strandell* district court and those expressed in the article by Judge Lambros on

**15.** *See Lockhart v. Patel,* 115 F.R.D. 44 (E.D.Ky. 1987).

**16.** For text of the resolution and draft, *see Strandell, supra,* 115 F.R.D. at 335.

**17.** See the scholarly discussion of the court's inherent powers in *Eash v. Riggins Trucking Co.,* 757 F.2d 557 (3rd Cir.1985) (jury costs may be imposed on parties and attorneys making belated settlements).

which the district court relied.[18] This court holds that participation in summary jury trials may be mandated by trial courts in their discretion even aside from the existence of a local rule. Of course, where, as here, a local rule exists, the power of the court is even clearer, as has been discussed above.

## SOME PERSONAL OBSERVATIONS

It is certainly true, as Judge Posner points out in his insightful article, that the effectiveness of summary jury trials has not been scientifically verified. I for one would welcome a controlled experiment along the lines he suggests to see if it can be verified and in what types of cases summary jury trials are most useful. Also, it would be profitable to try to discern the most effective techniques for employing them. It is interesting to note, however, that a controlled scientific experiment such as that suggested by Judge Posner cannot be effectively conducted unless summary jury trials are mandatory.

It is also true, as Judge Posner points out, that summary jury trials have largely been implemented according to the predilections of the individualistic federal trial judges who are fond of them. It is these judges who believe in them that make them work.

Why not then let these judges continue to give them a try, as we have been doing and as has been endorsed by the Judicial Conference? If the procedure is ineffective and wastes time, we may expect it to be abandoned, since most federal trial judges are not profligate of their time.

It is true that to date we have only unscientific anecdotal evidence of the effectiveness of summary jury trials. But not everything in life can be scientifically verified. I have only unscientific anecdotal evidence that Hawaii is more beautiful than Covington, but I intend to expend a considerable sum to go there as soon as I get the chance.

In my own experience summary jury trials have netted me a savings in time of about 60 days and I have only used the procedure five times. It settled two of these cases that were set for 30–day trials. It is true that I cannot prove scientifically that the cases would not have settled anyway but my experience tells me they would not.[19] I do know that but for my making summary jury trials mandatory in these cases, they would not have occurred. I know also that the attorney who objected to the first summary jury trial he was required to participate in is now the biggest local fan of the procedure. In the case at bar I am gambling a five-day summary jury trial against a six-week real trial. Six to one is pretty good odds.

I do not believe summary jury trials are a panacea or that they should be used in a large volume of typical cases. Perhaps Judge Lambros and others would disagree with me on this. I believe that a summary jury trial is a useful device, however, to settle a complex case with one or two key issues, where the problem with settlement is that the parties differ in their views of

---

**18.** *See* Lambros, *supra* note 6, 103 F.R.D. at 469. Our research discloses no authority other than the *Strandell* appellate decision holding that a trial court is without power to hold a mandatory summary jury trial. Other decisions and commentary are unanimously to the contrary. *Cincinnati Gas & Electric Co. v. General Electric Co.,* 117 F.R.D. 597 (S.D.Ohio 1987); W. Bertelsman & K. Philipps, *Kentucky Practice,* Rule 16, p. 20 (Supp.1987); Gwin, *Summary Jury Trial: An Explanation and Analysis,* 52 Kentucky Bench & Bar, No. 1, at 16 (Winter 1987–88).

**19.** I also don't know if other cases moved "up the queue" or not. (See discussion of Judge Posner *supra,* note 12). In fact, I used the time saved to work six days a week instead of seven

for awhile, perhaps saving me from a heart attack. This, too, was a benefit to the system. (At least I think so, although you could probably find a few dissenters among the members of the local bar.) I do not follow Judge Posner's reasoning in the excerpt quoted in note 12, *supra,* that because a judge holds a summary jury trial other cases that would have settled don't settle and the same number of trials are held. I would suggest that one reason there is no great difference in statistics between districts that employ summary jury trials and those that do not is that summary jury trials are used in only about one percent of the cases. I do agree with Judge Posner that the scope of federal court jurisdiction should be reevaluated.

how the jury will react to the key issues. I believe that substantial amounts of time can be saved by using summary jury trials in a few select cases.

Also—and this I submit has not been sufficiently appreciated by Judge Posner and the Seventh Circuit—the summary jury trial gives the parties a taste of the courtroom and satisfies their psychological need for a confrontation with each other. Any judge or attorney who has handled domestic or employment cases can tell you (unscientifically but reliably) that emotional issues play a large part in some cases. When emotions run high, whether between parties or attorneys, cases may not settle even when a cost-benefit analysis says they should. A summary jury trial can provide a therapeutic release of this emotion at the expenditure of three days of the court's time instead of three weeks. After the emotions have been released the parties are more likely rationally to do the cost-benefit analysis, and the case may then settle.[20]

Summary jury trials also give the clients a chance realistically to appraise the cost and emotional stress of an actual trial and require them to sit and listen to the other side's case and see how a jury reacts to it. The summary jury trial may be the client's first opportunity to look at the other side of the case first hand rather than through his or her attorney. The attorney is often not in a position to give the client an objective view of the merits. After all, he was hired as a gladiator not a diplomat.

In short, there are many, many emotional and psychological factors in trying and settling cases that cannot be reduced to scientific formulae.

I agree with Judge Posner: let's not rely on purely anecdotal evidence, let's employ the techniques of science to evaluate the utility of summary jury trials, if it can be done. But let's not smother a promising infant in the cradle as has been attempted by the Seventh Circuit.[21] After a period of experimentation, according to the declared policy of the Judicial Conference, perhaps

---

**20.** Judge Lambros put it this way:

"It is clear that settlement of cases prior to trial provides a cost savings in terms of litigation. One aspect of this savings is the elimination of the need to empanel a jury. Some cases, however, are not amenable to settlement through the usual pretrial methods of dispute resolution, or the alternative methods mentioned above. There may be a variety of reasons for this inability to settle. *Litigants may refuse to accept a compromise because emotionally they need a 'day in court' to tell their story. Absent the opportunity to hear both sides of the case presented to the finders of fact, a lawyer and his client may be unable to objectively recognize the weaknesses in their position.* The lawyer and his client may believe they can 'pull off' a weak case if only they can get it in front of a jury. These reasons, among others, act as barriers to settlement; barriers which often result in protracted litigation and expense.

"The Summary Jury Trial (SJT) provides a means by which to decimate these barriers to settlement. Alternatively, SJT can aid in streamlining jury trials so that the trial process undergoes a more efficient use of time.

\* \* \* \* \* \*

"The SJT can be an effective predictive process for ascertaining probability of results. It is my perception that the sole bar to settlement in many cases is the uncertainty of how a jury might perceive liability and damages. Such uncertainty often arises, for example, in cases involving a 'reasonableness' standard of liability, such as in negligence litigation. No amount of jurisprudential refinement of the standard of liability can aid the resolution of such cases. Parties' positions during settlement negotiations in cases of this type are based on an analysis of similar cases within the experience of counsel as to juries' determinations of liability and findings of damages. Such comparison is usually of little value, however, as parties tend to aimlessly grope toward some notion of a likely damages award figure upon which to base their negotiating positions. The parties and the court may become frustrated in cases, especially where neither party wants to fully try the case on the merits and the only roadblock to a meaningful settlement is the uncertainty of how a jury might perceive liability and damages." 103 F.R.D. at 468–9.

**21.** The Federal Judicial Center reports that, as of 1986, 25 federal district judges were experimenting with summary jury trials. *See Alternative Methods for Promoting Settlements, Settlement Strategies for Federal District Judges* 43, 68–76 (Federal Judicial Center 1986). Former Chief Justice Burger referred to such judges as "judicial pioneers [who] should be commended for their innovative programs. We need more of them in the future." *Id.* at 69 n. 171, *quoting* W. Burger, 1984 Year–End Report on the Judiciary. *See also,* Wilkinson, *ADR Is Increasingly Effective, Averts Litigation in Many Cases,* Nat'l L.J., Apr. 4, 1988, at 22, col. 1.

uniform rules can be formulated for the use of summary jury trials, if this seems desirable. Perhaps also, after a period of experimentation and improvement they will gain sufficient credibility that many attorneys will agree to be bound by the summary jury's verdict. This would effect substantial savings of time.

The objection to the summary jury trial setting in this case is hereby OVERRULED.