**FEDERAL RESERVE BANK OF MINNEAPOLIS, Plaintiff,**

v.

**CAREY–CANADA, INC., et al., Defendants.**

Civ. No. 3–86–185.

United States District Court,
D. Minnesota,
Third Division.

Nov. 17, 1988.

## ORDER

JANICE M. SYMCHYCH, United States Magistrate.

This matter came before the undersigned United States Magistrate on November 2, 1988, for a scheduled pretrial conference prior to a summary jury trial (SJT), scheduled to commence December 12, 1988. The SJT was set by order entered on October 3, 1988, following a formal settlement conference. At that conference, which was attended both by counsel and representatives of the parties, all concurred that the SJT would be a useful settlement effort in this matter. At the pretrial conference, Michael Sieben, Esq., Michael Strom, Esq., and Harvey Jones, Esq., appeared on behalf of plaintiff. Marc Whitehead, Esq. and Donald Lewis, Esq., appeared on behalf of W.R. Grace. Joel Flom, Esq., appeared on behalf of Carey–Canada and Celotex. At the outset of the conference, all parties formally entered objection to proceeding with a summary jury trial and requested the undersigned to excuse their participation. This request was denied for the reasons set forth below. Other procedural issues regarding the SJT were disposed of, as outlined below.

## I. BACKGROUND

This is an asbestos case, involving claims of property damage to a commercial building. Plaintiff claims its property was allegedly damaged and the health of its employees endangered by defendants' fireproofing of the Federal Reserve Bank with asbestos-containing products. Plaintiff argues that because the product threatens serious health risks, it requires immediate removal. This entails relocating the operation of the bank, and tearing it apart beam by beam. Plaintiff seeks compensatory and punitive damages, in the amount of $48 million dollars, attributable to this process. It claims defendants are liable under negligence, strict liability, fraud, and conspiracy theories.

Defendants deny liability and argue that there is no actual harm to plaintiff's property, and no proven health risk for low-level asbestos exposure. They allege that plaintiff has overreacted by ripping up its premises and relocating only on a "potential" health risk. They further dispute the abatement process used by the plaintiff, arguing the same result could have been accomplished for less than $8 million dollars. W.R. Grace also claims that the majority of asbestos in the facility is attributable to Carey–Canada and Celotex, and that removal of the codefendants' asbestos necessarily involves removal of its asbestos. It argues then, that none of the costs of abatement are chargeable to it.

The case is set for jury trial commencing January 16, 1989, if settlement efforts are not fruitful. The summary jury trial is set to run for three days, December 12–14, 1988, and to be followed by settlement conference.

At the pretrial conference, each party voiced objections to the SJT, and ultimately objected to required participation in it. They argue that the process is too expensive, as it would cost each party approximately $50,000. Further, they cited the fact that the SJT would not be an accurate synopsis of a jury trial because several major evidentiary rulings would not be made by Judge Devitt until the last week in December, whereas the SJT was to take place December 12–14. Finally, they argue that the parties are truly at loggerheads and possibility of settlement is extremely remote, and advancement to trial definite. They view the SJT process as using valuable trial preparation time without contributing significantly to clarification of issues or attorney preparation for trial.

## II. DISCUSSION

■ This court is called upon to decide whether the court may compel attendance and participation in a non-binding summary jury trial absent consent of the parties. This is an issue of first impression in Federal District Court in Minnesota and in the Eighth Circuit Court of Appeals. The undersigned finds that in light of the court's inherent power to manage and control its docket, and in light of Rules 1 and 16 of the Federal Rules of Civil Procedure, and Local Rule 3 of this court, that the court possesses the authority to compel participation and attendance in a summary jury trial.

The Supreme Court has long acknowledged the power of the court to control and manage its docket. In *Link v. Wabash,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), the Court made clear that this power is inherent, and not dependent upon any express statute or rule conferring such power. The ability of a court to use its discretion to manage its crowded docket must be protected. "The exigencies of modern dockets demand the adoption of novel and imaginative means lest the courts, inundated by a tidal wave of cases fail in their duty to provide a just and speedy disposition of every case." *Lockhart v. Patel,* 115 F.R.D. 44 (E.D.Ky.1987). Parties and attorneys are often and understandably reluctant to accept and participate in procedures outside the traditional norm. It is often difficult to focus the attention of counsel and litigants on settlement as an alternative means of resolving a case. The need to compel the parties to address settlement, is an integral aspect of the docket management function of the court in this era of complex, protracted litigation.

Since the introduction of the summary jury trial in 1984 by United States District Judge Thomas Lambros, from the Northern District of Ohio, it has gained widespread use and acceptance as a valuable settlement tool. Moreover, it is clear that settlement of cases prior to litigation provides a major cost saving for the parties as well as conservation of judicial resources. There may be a variety of reasons why cases do not settle. Parties may refuse to accept settlement as they feel that they are entitled to and need their day in court. Parties may believe that the only way to prevail on a weak case is to get the case before a jury. Parties may be unable to objectively recognize or assess the strengths and weaknesses of their position without submission of the issues to a finder of fact. These reasons, among others, act

as impediments to settlement of cases which should otherwise be resolved without trial.

The SJT provides a means by which to eliminate these barriers to settlement. SJT is the only dispute resolution technique which uses the input of a jury of laymen as fact finders. It is this facet of SJT which permits the parties, not the attorneys, to believe that their story has been told, and a decision reached by an objective body. The decision resulting from the SJT inevitably results in both sides re-examining and re-evaluating their positions and demands.

SJT is a flexible pretrial procedure which adds appreciably to the analysis of trial bound cases. Generally, it is used in cases where settlement seems unlikely and settlement negotiations are at or near impasse. Even in cases where SJT does not result in settlement, it provides clarification of the issues, and results in superior preparation for trial. The SJT does not abolish any substantive rights of the parties; they are still entitled to a binding trial, if the summary proceedings do not lead to settlement of the case. The SJT represents one alternative which courts are employing in an effort to secure to civil litigants just, speedy, and inexpensive determination of their claims of which litigants may be otherwise deprived because of the overwhelming and overburdening caseloads in many federal courts.

As stated above neither the Federal District Court in Minnesota nor the Eighth Circuit Court of Appeals has addressed the question presented here. Several recent district court opinions in other jurisdictions have held that the court is authorized to order mandatory summary jury trials. *McKay v. Ashland Oil Co., Inc.*, 120 F.R.D. 43 (E.D.Ky.1988); *Arabian American Oil Company v. Scarfone*, 119 F.R.D. 448 (M.D.Fla.1988); *cf. Rhea v. Massey–Ferguson, Inc.*, 767 F.2d 266 (6th Cir.1985). As in this matter, each of these cases involved complex issues, parties who were poles apart in terms of settlement and cases which promised to consume a good deal of trial time.

In *McKay*, a wrongful discharge case, a six-week trial was planned if the summary jury trial and other efforts did not result in settlement. The *McKay* district court based its decision, in large part, upon its local rule authorizing the court to set any civil case for summary jury trial or other alternative method of dispute resolution. *McKay*, 120 F.R.D. at 44. Here, Local Rule 3(C), as previously discussed, provides similar authority. This rule articulates that the court may order the parties to appear for consideration of the subjects specified in Fed.R.Civ.P. 16 or other matters determined by the judge. Rule 16(c)(7) provides authority for the court to order the use of extrajudicial procedures. *See* Fed.R.Civ.P. 16(c)(7). Here, the undersigned has acted within that authority by compelling the parties' participation in the SJT proceeding.

In *Arabian American Oil*, a case expected to consume seven courtroom weeks, the district court cited Fed.R.Civ.P. 16(a)(1), (5) and (c)(11), along with its inherent power to control its own docket, as a basis for compelling SJT participation. No local rule existed which expressly authorized its use. In its decision, the court articulated that under Article Three of the United States Constitution, its mission was to promptly administer justice in matters before it. *Arabian American Oil*, 119 F.R.D. at 449. The SJT represents one alternative dispute resolution process which allows the courts to secure civil litigants a just, speedy, inexpensive determination of their claims. The court also continued on that, even if settlement does not result, a clarification of issues results, which is invaluable in the later trial. Similarly, the undersigned finds the SJT to be a legitimate device to implement this court's policy to provide litigants with an expeditious resolution of their case.

The only contrary authority is in the Seventh Circuit, where it set forth both directly and indirectly, in the cases of *Strandell v. Jackson County, Illinois*, and *G. Heileman Brewing Company v. Joseph Oat Corp.*, 848 F.2d 1415, *reh'g granted* (7th Cir.1988). In *Strandell*, a case in which one trial was to last five to six

weeks, the Seventh Circuit, in reversing the district court, concluded that the district court did not have the authority to order a mandatory summary jury trial. While the Court noted that the Advisory Committee Notes to Fed.R.Civ.P. 16 intended that the courts "explor[e] the use of procedures other than litigation to resolve the dispute,— including the use of adjudicatory techniques outside the courthouse," it found that the litigants' participation could not be required. *Strandell v. Jackson County, Ill.*, 838 F.2d 884 at 887 (7th Cir.1987); Fed.R.Civ.P. 16 Advisory Committee Notes.

The Seventh Circuit reasoned that compelled participation would result in litigants' loss of their right to proceed to trial, and forced courthouse settlements. *Id.* at 888. The *Strandell* district court decision, did not, however, even indirectly suggest that the parties would be denied their trial right, if no settlement was achieved. Although the district court informed the litigants that no court time was available until the distant future, they were not denied their right to trial altogether or informed that a summary jury trial was the only allowable mechanism of adjudication for resolution of their dispute. It goes without saying that the court's discretion is not so unbridled as to permit the forced settlement of lawsuits. *Kothe v. Smith*, 771 F.2d 667 (2nd Cir.1985); *Lockhart v. Patel*, 115 F.R.D. 44 (E.D.Ky.1987);

Furthermore, the Seventh Circuit was concerned in *Strandell*, at 888, that the violation of privilege or protection of work product issues might come into play. This concern is misplaced. Because of the extensive pretrial procedures involved in preparing litigation in federal courts and because a SJT is based on facts disclosed by discovery and is to be a synopsis of the actual trial, it is difficult to believe that anything would be disclosed at a SJT that would not ultimately be disclosed at the actual trial. If the Seventh Circuit implication is that a SJT prevents the litigant from saving some surprise for the trial, the Federal Rules of Civil Procedure are designed to avoid that eventuality. Trial by ambush is no longer an accepted method of practice.

In *Heileman*, a case which arguably reinforces the *Strandell* opinion, the Seventh Circuit cited its earlier decision, in holding that a court may order attorneys and unrepresented parties, but not represented parties, to appear for settlement conferences. *Id.* at 1421. The opinion analyzed the language of Rule 16 of the Federal Rules of Civil Procedure, which authorizes the court to order the attendance of attorneys and non-represented parties to appear for settlement conferences. Due to the existence of Minnesota District Court Local Rule 3, which specifically authorizes the court to order the attendance of attorneys and parties, the *Heileman* decision is inapplicable to this case. Most significantly, however, the panel opinion has been withdrawn, the matter reheard enbanc with the disposition yet pending. *See G. Heileman Brewing Company v. Joseph Oat Corp.*, 848 F.2d 1415, *reh'g granted* (7th Cir.1988).

For these reasons, the view of the Seventh Circuit is rejected, and the rationale of the above-cited District Court opinions accepted here as the better approach on the question at hand. In addition to the case precedent, an analysis of the applicable rules and comments confirms the view that the parties may be compelled to participate in settlement efforts, such as the SJT.

Rule 1, Fed.R.Civ.P., states that the rules "shall be construed to secure the just, speedy, and inexpensive determination of every action." Rule 16(a), concerning pretrial activities, states, "in any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial for such purposes as (1) expediting the disposition of the action ... and (5) facilitating settlement of the case." Rule 16(c)(7) and (11) provide that "the participants at any conference under this rule may consider and take action with respect to ... (7) the possibility of settlement or the use of extrajudicial procedures to resolve the dispute ... and (11) such other matters as may aid in the disposition of the action." Fed.R.Civ.P. 16(c)(7) and (11); *See Strandell v. Jackson County, Ill.*, 115 F.R.D. 333 (S.D.Ill.1987).

Local Rule 3, further provides that "Each judge may prescribe such pre-trial and discovery procedures as the judge may determine appropriate .... each judge on their own initiative, on motion of any party to an action, or by stipulation of the parties may order the attorneys and the parties to appear for a pre-trial conference to consider the subject specified in Fed.R.Civ.P. 16, or other matters determined by the judge." Local Rule 3(C).

The SJT process recognizes the importance our judicial system places on decisions rendered by jurors. This is consistent with Fed.R.Civ.P. 39(c), which provides for an advisory jury in cases not triable to a jury as of right. Additionally, the use of SJT is consistent with Fed.R.Civ.P. 83 which provides in part, "in all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules."

The Federal Rules of Civil Procedure were amended in 1983. The Advisory Committee Notes articulate that the obvious goal of the amendments was the promotion of case management of which settlement is a valuable tool. Fed.R.Civ.P. 16 Advisory Committee Note to 1983 Amendments. Therefore, it is difficult to reconcile the argument that Rule 16 does not permit courts to order the parties to participate in summary jury trials with the goals of that rule. It is hard to imagine that the drafters of the 1983 amendments actually intended to strengthen courts' ability to manage their caseloads while at the same time intended to deny the court the power to compel participation by the parties to the litigation.

Moreover, the Judicial Conference of the United States has passed a formal resolution endorsing the use of SJT as a potentially effective means of promoting settlement. Report of Judicial Conference Committee on the Operation of the Jury System, Agenda G–13, Page 4, September 1984. The Judicial Conference was aware that SJT were not specifically or expressly provided for or authorized by the Federal Rules of Civil Procedure, and language which would have limited the use of SJT "only with the voluntary consent of the parties" was purposely deleted from a previous draft of the report. Therefore, it appears that compelled attendance and participation in summary jury trials is consistent with the Federal Rules of Civil Procedure.

This court believes that, in a case such as this, it is reasonable to require the parties to engage in settlement efforts with some degree of intensity. The parties argue that the investment of attorney time and money would be wasted on the SJT proceeding. However, an investment of three days for the SJT when compared to a potential real jury trial lasting four-to-six courtroom weeks is reasonably proportionate. The court further believes that the SJT procedure, even if it does not lead to settlement, will be of substantial benefit in this case by clarifying issues for trial, both for the parties and the court.

The parties complain also that the SJT procedure would not be a representative synopsis of the actual trial as contemplated by the purpose underlying the procedure due to the pending evidentiary motions before Judge Devitt. This court finds the complaint to be without merit. Because of the nonbinding nature of the SJT procedure, evidentiary rules are more flexible than in an actual jury trial. Furthermore, in order to more adequately reflect the outcome of an actual trial, this court can decide crucial evidentiary issues for the purpose of the SJT proceeding.

■  The parties have voiced a concern over the potential for premature publicity and public disclosure as a result of the SJT. This concern was alleviated by this court's agreement to close the SJT to the public. The closing of the SJT is within the discretion and power of the court. *See Cincinnati Gas & Electric Company v. General Electric*, 117 F.R.D. 597 (S.D.Ohio 1987), *aff'd* 854 F.2d 900 (6th Cir.1988).

For the foregoing reasons, this matter is deemed appropriate for SJT, as a step in consideration of settlement in this case. The court finds it likely that the procedure will be of benefit to both the parties and the court both in the event of settlement or

nonsettlement. Having carefully considered the parties' objection to participation in the procedure, it is the court's view that the objection must be overruled. Resort to a totally voluntary system of the use of SJT, where the attorneys are aware of the court's inability to compel their attendance and participation would undercut the potential efficacy of the procedure.

Therefore, based upon the arguments of counsel, and all the files and proceedings herein,

IT IS HEREBY ORDERED that:

1. The parties' objections to participation in a court-ordered summary jury trial are OVERRULED, and their requests that the order for SJT be vacated are DENIED; and

2. The attached pre-SJT order shall supplement and modify the earlier order herein, and shall govern the SJT proceedings.