**In re NLO, INC., et al., Petitioners.**

**No. 93–3065.**

United States Court of Appeals,
Sixth Circuit.

Argued June 10, 1993.
Decided Sept. 17, 1993.

Kevin T. Van Wart (Argued), Kirkland & Ellis, Chicago, IL, for NLO, Inc.

Arthur R. Miller (Argued), Harvard Law School, Cambridge, MA, for David Day.

Before: MERRITT, Chief Judge; and JONES and NELSON, Circuit Judges.

MERRITT, Chief Judge.

Petitioners seek a writ of mandamus to vacate two rulings of the district court arising from the ongoing proceedings in *Day v. NLO, Inc.,* 147 F.R.D. 148 (S.D.Ohio 1993): (1) that all parties shall participate in a "summary jury trial," open to the media and the public, enforceable by sanctions against counsel for anything less than full participation; and (2) that plaintiffs in the action be certified as a class under Fed.R.Civ.P. 23(b)(2). For the reasons stated below, we grant the petition and issue the writ vacating the order to participate in the summary jury trial. We deny the petition as to the class certification order.

## I.

The Feed Materials Production Center in Fernald, Ohio is a uranium processing facility owned by the United States. It was managed by NLO from 1952 through 1985. On January 30, 1990, ten individuals sued NLO and its corporate parent on behalf of a putative class consisting of all persons employed at the Center during NLO's period of management, and the families of those persons. They claimed that NLO had intentionally or negligently exposed them to hazardous levels of radioactive materials, increasing their risk of cancer and subjecting them to emotional distress. They sought punitive and compensatory damages, attorney fees, interest, and a court-supervised program of medical monitoring and surveillance services, the costs of which would be borne by petitioners.

NLO moved to dismiss on various grounds, including the running of the applicable statute of limitations. A seven-week threshold trial was held on the statute of limitations issue, and the claims of six of the ten named plaintiffs, including five of the six former workers, were found to be time-barred. The district court then certified the class pursuant to Fed.R.Civ.P. 23(b)(2) on June 22, 1992, and defined the class in an order filed August 20. The class includes all NLO employees, sub-contractors and employees of sub-contractors who were present at the Center for six continuous weeks and left on or before December 31, 1981. The court held that plaintiffs' claim for a court-supervised medical monitoring program, financed by defendants, constituted the "final injunctive relief or corresponding declaratory relief" available under Rule 23(b)(2). Defendants moved for reconsideration or, in the alternative, for interlocutory appeal pursuant to 28 U.S.C. § 1292. The district court denied the motion in an Order dated November 20, 1992, 811 F.Supp. 1271.

The district court also ordered that a summary jury trial be held as a settlement tool, to commence February 16, 1993, with a subsequent full trial on the merits (if required) to start September 20, 1993. At a Pretrial Conference December 2, 1992, the district court stated for the first time that the summary jury trial would be open to the public. NLO moved for a reconsideration of this ruling or, in the alternative, for interlocutory appeal, and the district court denied this motion as well, in an Order dated January 20, 1993.

NLO filed a petition for mandamus in this court January 25, 1993, seeking emergency review of the court's orders denying their motions for reconsideration. An emergency panel granted a stay and set the case for oral argument.

## II.

### A.

■ This court may issue a writ of mandamus pursuant to the All Writs Statute, 28 U.S.C. § 1651. However, petitioners bear a

heavy burden in showing that mandamus is the proper remedy; they must establish a "clear and indisputable right" to the relief requested. *Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 661–62, 98 S.Ct. 2552, 2557, 57 L.Ed.2d 504 (1978). They must demonstrate a clear abuse of discretion or conduct amounting to usurpation of the judicial power. *Mallard v. United States District Court,* 490 U.S. 296, 309, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989). An error of law, standing alone, is not sufficient, for "then every interlocutory order which is wrong might be reviewed under the All Writs Act." *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953). "The general principle which governs proceedings by mandamus is, that whatever can be done without the employment of that extraordinary writ, may not be done with it. It lies only when there is practically no other remedy." *Helstoski v. Meanor,* 442 U.S. 500, 505, 99 S.Ct. 2445, 2448, 61 L.Ed.2d 30 (1979), quoting *Ex parte Rowland,* 104 U.S. 604, 617, 26 L.Ed. 861 (1882).

In *In re Bendectin Products Liability Litigation,* 749 F.2d 300, 303–04 (6th Cir. 1984), we were required to properly apply these general admonitions to specific circumstances. We adopted the following five-step framework for considering petitions for mandamus, taken from the Ninth Circuit case of *Bauman v. United States District Court,* 557 F.2d 650 (9th Cir.1977):

(1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired.

(2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first.)

(3) The district court's order is clearly erroneous as a matter of law.

(4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.

(5) The district court's order raises new and important problems, or issues of law of first impression.

*Bendectin,* 749 F.2d at 304. "These guidelines are cumulative and may not all point to

the same conclusion ... in many cases, a proper disposition will often require a balancing of conflicting factors." *Id.*

## B.

We turn first to the order of the district court concerning the summary jury trial. Taking the *Bendectin* guidelines slightly out of order and beginning with the third, we find the district court's order compelling participation in a summary jury trial under threat of sanctions to be clearly erroneous as a matter of law.

A summary jury trial is a non-binding mini-trial designed to give the attorneys and their clients an indication of what they may expect at a full-blown trial on the merits. The parties exchange evidence before the summary jury trial has commenced, and are limited to the evidence thus disclosed. A jury is selected from the regular jury pool. The parties then present opening statements, summarize the evidence which would be presented at a full trial (no live testimony is permitted), and present closing statements. The jury is then charged with the law and asked to respond to a series of interrogatories concerning liability and damages. *See* S. Arthur Spiegel, *Summary Jury Trials,* 54 U.Cin.L.Rev. 829 (1986).

The district court held that compulsory summary jury trials are permitted in this circuit under *Cincinnati Gas and Elec. Co. v. General Elec. Co.,* 854 F.2d 900 (6th Cir. 1988), *cert. denied,* 489 U.S. 1033, 109 S.Ct. 1171, 103 L.Ed.2d 229 (1989). In *Cincinnati Gas,* a panel of this court upheld the district court's decision to exclude the press from a summary jury trial. We indicated that a summary jury trial was a permissible tool for a district court to use in promoting resolution of the cases before it. "Courts have the power to conduct summary jury trials under either Fed.R.Civ.P. 16, or as a matter of the court's inherent power to manage its cases [citations omitted]." *Id.* at 903 n. 4. But in footnote 5, we stated:

Appellants' assertion that the summary jury trial is like an adjudication because the parties are *compelled* to participate is incorrect. The district court expressly stated that the proceeding was undertaken

with the *cooperation* of the parties. Although the court denied appellants' motion to vacate the order setting the summary jury trial, it accommodated appellants' concerns to keep the proceeding confidential, thereby making it unnecessary for appellants to challenge the court's denial of the motion.

*Id.* at 904–05 (emphasis supplied). Since appellants did not challenge on appeal the denial of their motion, the issue of power to compel participation was not squarely addressed in that case. We now do so.

■ District courts unquestionably have substantial inherent power to manage their dockets. *See Link v. Wabash R. Co.,* 370 U.S. 626, 629–30, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962). That power, however, must be exercised in a manner that is in harmony with the Federal Rules of Civil Procedure. *See Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965). At issue here is Fed.R.Civ.P. 16.

Our analysis of this issue relies heavily on the reasoning of the Seventh Circuit in *Strandell v. Jackson County,* 838 F.2d 884 (7th Cir.1987). In *Strandell,* the district court ordered the parties to participate in a summary jury trial. Counsel for the plaintiff refused, asserting that the summary jury trial would require disclosure of privileged work product, and offering instead to proceed immediately to a full trial. The district court cited him for contempt, and counsel appealed the order. The Seventh Circuit vacated the order of contempt. Judge Ripple, writing for a unanimous panel, based the court's decision on several factors, including the language of Rule 16 and the corresponding Commentary of the Advisory Committee, Seventh Circuit decisions predating the 1983 amendments to the Rules, and the impact on established law concerning discovery and work product privilege.

■ Rule 16(a) gives district courts the power to compel attendance at pretrial conferences. Rule 16(c) gives guidance concerning "subjects to be discussed" at those conferences:

The participants at any conference under this rule *may consider* and take action

with respect to ... (7) the possibility of settlement or the use of extrajudicial procedures to resolve the dispute; ... (10) the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems....

(emphasis supplied). The Advisory Committee notes to Rule 16(c)(7) indicate that no compulsory authority exists:

[I]t is not the purpose of Rule 16(c)(7) to impose settlement negotiations on unwilling litigants.... The rule does not make settlement conferences mandatory.... In addition to settlement, Rule 16(c)(7) refers to *exploring* the use of procedures other than litigation to resolve the dispute. This includes *urging* the litigants to employ adjudicatory techniques outside the courthouse.

(emphasis supplied). The Supreme Court has established that "in ascertaining [the] meaning [of the Rules] the construction given to them by the Committee is of weight." *Mississippi Pub. Corp. v. Murphree,* 326 U.S. 438, 444, 66 S.Ct. 242, 246, 90 L.Ed. 185 (1946). We hold that the provisions of Rule 16, as amplified by the Commentary of the Committee, do not permit compulsory participation in settlement proceedings such as summary jury trials.

■ District courts struggle to deal effectively with caseloads expanding at a precipitous rate. The utilization of procedures designed to facilitate settlement whenever possible is expressly encouraged by Rule 16, for a case that settles obviously consumes much less of the court's scarce resources than a case that proceeds to a full trial on the merits. Although judges should encourage and aid early settlement, however, they should not attempt to coerce that settlement. "Rule 16 ... was not intended to require that an unwilling litigant be sidetracked from the normal course of litigation." *Strandell,* 838 F.2d at 887. Requiring participation in a summary jury trial, where such compulsion is not permitted by the Federal Rules, is an

**158**

unwarranted extension of the judicial power.[1]

Reliance on the pure inherent authority of the court is equally misplaced. Some district courts have used this rationale to justify mandatory summary jury trials. *See, e.g., McKay v. Ashland Oil, Inc.,* 120 F.R.D. 43, 48 (E.D.Ky.1988) ("mandatory summary jury trials would seem to be within the inherent power of the court"); Thomas D. Lambros, *The Summary Jury Trial, and Other Alternative Methods of Dispute Resolution: A Report to the Judicial Conference of the United States,* 103 F.R.D. 461, 469 (summary jury trial is within "the court's inherent power to manage and control its docket"). We cannot sanction this imprudent expansion of the judicial power. As Judge Richard Posner stated in another context:

> [T]here are obvious dangers in too broad an interpretation of the federal courts' inherent power to regulate their procedure. One danger is that it encourages judicial high-handedness ("power corrupts"); several years ago one of the district judges in this circuit ordered Acting Secretary of Labor Brock to appear before him for settlement discussions on the very day Brock was scheduled to appear before the Senate for his confirmation hearing. The broader concern illustrated by the Brock episode is that in their zeal to settle cases judges may ignore the value of other people's time.

*G. Heileman Brewing Co. v. Joseph Oat Corp.,* 871 F.2d 648, 657 (7th Cir.1989) (Posner, J., dissenting).

■ We do not question the proposition that summary jury trials may be valuable tools in expediting cases. However, the *voluntary* cooperation of the parties is required to maximize the effectiveness of such proceedings. Indeed, if such proceedings truly are valuable, voluntary cooperation will be forthcoming.

> If summary jury trials aid parties in realistically assessing their potential liability or award and facilitate settlement talks, then litigants will voluntarily participate in order to avoid the expenses associated with lengthy trials.... Judges who require particular lawyers or litigants to participate in additional and unconventional settlement procedures unnecessarily call their own impartiality into question ... undermin[ing] the atmosphere of fairness and justice in the federal courts.

Jennifer O'Hearne, Comment, *Compelled Participation in Innovative Pretrial Proceedings,* 84 Nw.U.L.Rev. 290, 320 (1989). Requiring participation in a pre-trial conference, even if settlement is explored, is permitted under Rule 16(a), and justifiably so, for it may facilitate settlement at very little expense to the parties and the court. A jury trial, even one of summary nature, however, requires at minimum the time-consuming process of assembling a panel and (one would hope) thorough preparation for argument by counsel, no matter how brief the actual proceeding. Compelling an unwilling litigant to undergo this process improperly interposes the tribunal into the normal adversarial course of litigation. It is error.

■ Turning now to the other *Bendectin* guidelines, petitioners cannot challenge the order by direct appeal. The district court denied their motion to certify the ruling for interlocutory appeal under 28 U.S.C. § 1292, finding no "substantial ground for difference of opinion given this Court's decision in *In re*

---

1. Congress has considered on several occasions a specific grant of such compulsory authority to district courts, none of which has passed. *Strandell,* 838 F.2d at 888 n. 5. In 1990, Congress enacted Pub.Law 101–650, adding §§ 471–482 to *Title 28 of the U.S.Code. Section 473(a) permits* district courts to consider "principles and guidelines of litigation management and cost and delay reduction," including referral of appropriate cases to alternative dispute programs that "the court may make available," such as summary jury trials, § 473(a)(6)(B). In subsection (b), the court is authorized to require participation in several techniques developed from these principles and guidelines; summary jury trials are not mentioned. An alternate bill, 1990 S. 2027, 101st Cong., 2d Sess. § 3, would have amended 28 U.S.C. § 473(a) to permit courts to mandate such alternative dispute techniques as summary jury trials, but this bill did not pass.

Several recent bills have encouraged use of alternative dispute resolution; all have referred to summary jury trials as an option available to willing litigants. *See* 1992 H.R. 4150, § 2306(b)(6); 1992 S. 2217, § 2306(b)(6); 1992 H.R. 4155, § 7(b)(6); 1992 S. 2180, § 7(b)(6) (all four bills introduced in 102d Cong., 2d Sess.).

*Fernald* [Case No. C–1–85–149 (S.D.Ohio 1985) ] and the Sixth Circuit's decision in *Cincinnati Gas.*" A direct appeal of the order to participate in a summary jury trial will never be possible; a final decision on the merits would necessarily take place after such a proceeding had already occurred.

One possible alternative would be for defendants to refuse to participate in the summary jury trial and risk being held in contempt; the criminal contempt order could then be appealed to this court. But the purpose of criminal contempt is punitive; it vindicates the authority of the court. *Gompers v. Buck Stove and Range Co.,* 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). We have already concluded the district court does not have the authority to make the ruling in question; we see no reason to delay the proceedings further merely to use a different procedural vehicle to promulgate our holding on this issue.

The next *Bendectin* guideline inquires whether the petitioner will be damaged or prejudiced in a way not correctable on appeal. The expense of compulsory participation in a summary jury trial, even of short duration, is unnecessary and irremediable. Alternatives such as defiance and appeal of any resulting contempt order are equally impractical, and will result in irremediable prejudice. We find this guideline, as well, militates in favor of petitioner's position.

The fourth *Bendectin* guideline applies to "oft-repeated" errors of the district court, or its manifest disregard of the federal rules. We certainly do not find such disregard on the part of the district court in this case. We are sympathetic to the efforts of district courts, when faced with complicated, multiparty civil actions in general and particularly in proceedings of this complexity, to impose some degree of manageability through innovative use of the federal rules. Since the district court has been a champion of the summary jury trial, *see* Spiegel, *Summary Jury Trials, supra,* and will no doubt continue to use them effectively on a voluntary basis, the guidance we give today may be

applied with some frequency in the future. The fourth guideline's emphasis on frequency supports our holding.

The final *Bendectin* guideline recommends mandamus for "new and important problems, or issues of law of first impression." Since appellate courts frequently address issues of first impression, this guideline may present weaker justification for use of the mandamus remedy than the other four. However, it militates in petitioner's favor as well. As stated above, we did not address directly in *Cincinnati Gas* the power of a district court to compel participation in a summary jury trial. At least one other district court in this circuit has reached a position contrary to the one we take today,[2] and our ruling may forestall future misapplications of Rule 16.

### C.

■ Petitioners also ask us to vacate the district court's order certifying a class under Fed.R.Civ.P. 23(b)(2). They assert that the medical monitoring claims sought by the plaintiffs are not cognizable under Rule 23(b)(2) as "final injunctive relief." Again applying the *Bendectin* guidelines, we conclude that mandamus will not lie. First and most importantly, class certification is clearly reviewable on direct appeal once a final disposition of the case has been reached. *See, e.g., Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1196–97 (6th Cir.1988). Second, petitioners have not alleged any harm or prejudice they will suffer if mandamus is not granted. There is likewise no allegation that such class certifications are an oft-repeated error of the district court, or that this is a new and important issue of first impression requiring immediate appellate attention. Finally, although none of the cases relied upon by the district court specifically hold that medical monitoring claims are cognizable under Rule 23(b)(2), they generally support the proposition that such relief is injunctive in nature. Assuming *arguendo* that the district court's certification under Rule 23(b)(2) is erroneous, it is not so clearly erroneous, in the absence of any other *Bendectin* factor,

**2.** *See McKay, supra,* in which the court specifically disagreed with *Strandell* and ordered a non-

consensual summary jury trial.

that mandamus is the proper remedy. We therefore decline to vacate the district court's class certification order.

## III.

The remedy of mandamus is a drastic one, and we apply it with some reluctance. We believe, however, that a careful application of this court's guidelines in the *Bendectin* case to the facts before us supports the writ here. Accordingly, we partially GRANT the petition for writ of mandamus and VACATE that portion of the district court's order filed June 22, 1992, ordering a summary jury trial. We DENY that portion of the petition requesting us to vacate the district court's class certification order.