**In re SOUTHERN OHIO CORRECTIONAL FACILITY.**

No. C–1–93–436.

United States District Court, S.D. Ohio, Western Division.

April 24, 1996.

Neal David Baker, Dinsmore & Shohl, Cincinnati, OH, Marc David Mezibov, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati,

OH, Alphonse Adam Gerhardstein, Cincinnati, OH, Fay Elizabeth Stilz, Stanley Morris Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, for Darrin E. Morris.

Neal David Baker, Dinsmore & Shohl, Cincinnati, OH, Marc David Mezibov, Sirkin, Pinales, Mezibov & Schwartz, Cincinnati, OH, Paul M. De Marco, Waite, Schneider, Bayless & Chesley Co-1, Cincinnati, OH, Alphonse Adam Gerhardstein, Cincinnati, OH, Stanley Morris Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, for Eugene K. Adams.

Joseph Matthew Mancini, Joshua T. Cox, Robert Warren Myers, Ohio Attorney General, Columbus, OH, Robert Philip Duvin, Duvin, Cahn & Barnhard, Cleveland, OH, Kevin Michael Norchi, Jacobson, Maynard, Tuschman & Kalur, Co. L.P.A., Cincinnati, OH, Gerald Arthur Messerman, Messerman & Messerman, Co. L.P.A., Cleveland, OH, Robert M. Wolff, Duvin, Cahn, Barnard & Messerman, Cleveland, OH, for Arthur Tate, Jr., Reginald A. Wilkinson.

Joseph Matthew Mancini, Joshua T. Cox, Robert Warren Myers, Ohio Attorney General, Columbus, OH, Kevin Michael Norchi, Jacobson, Maynard, Tuschman & Kalur, Co. L.P.A., Cincinnati, OH, Gerald Arthur Messerman, Messerman & Messerman, Co. L.P.A., Cleveland, OH, for George V. Voinovich.

Joseph Matthew Mancini, Joshua T. Cox, Robert Warren Myers, Ohio Attorney General, Columbus, OH, Gerald Arthur Messerman, Messerman & Messerman, Co. L.P.A., Cleveland, OH, for Terry Collins.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on the Defendants' motion to vacate the summary jury trial (doc. 118), which the Plaintiffs opposed (doc. 123).

## BACKGROUND

On April 11, 1993, several prisoners at the Southern Ohio Correctional Facility in Lucasville, Ohio ("SOCF") began an eleven-day siege of Ohio's maximum security prison. One prison guard and nine inmates were murdered during the riot. The riot itself was the longest and third-most-lethal disorder in recent history, behind Attica and Santa Fe.

Plaintiff Darrin E. Morris was an inmate at SOCF during the riot. He claims that the prison officials, specifically Warden Arthur Tate, Jr., were aware of the riot-type conditions before the riot but did nothing to prevent the riot. Mr. Morris first filed his complaint against Warden Tate and various other officials on June 28, 1993. Mr. Morris sought compensatory and punitive damages and injunctive relief.

On December 17, 1993, the Magistrate Judge appointed counsel for the Plaintiff. On March 17, 1994, the Magistrate Judge consolidated all of the cases relating to the SOCF riot. Document 25. Finally, on December 2, 1994, the Magistrate Judge certified the following class:

All inmates, living or deceased, who meet the following criteria: (1) the inmate has been incarcerated at the Southern Ohio Correctional Facility (SOCF) on or since April 11, 1993; and (2) the inmate has been classified as a general population inmate during some or all of that time period. This class definition includes two subclasses:

### SUBCLASS 1

All members of the class who were housed or present in K-8 on or about April 13, 1993.

### SUBCLASS 2

All members of the class who have been, or subsequently are, indicted for an alleged felony committed during and as part of the April 11-22, 1993, disturbance at SOCF. Any member of this Subclass who ultimately is not convicted of a felony committed during and as part of the April 11-22, 1993, disturbance at SOCF shall cease to be a member of this Subclass and shall be included in the Class. Any member of this Subclass who ultimately is convicted of a felony committed during and as part of the

April 11–22, 1993, disturbance at SOCF shall cease to be a member of this subclass and shall be excluded from the class.

Defendants may request exclusion of any individual from the Class for "good cause," meaning serious wrongdoing committed during and as part of the disturbance. Class counsel or the individual involved may contest such exclusion. The Court would resolve any disputes as to whether or not such an individual should be excluded from the class.

Document 65. The Magistrate Judge was careful to exclude from the class anyone who was responsible for perpetrating any portion of the riot.

The class members include inmates that were housed in K block. During the riot, a large number of inmates were locked down in K Block. Allegedly, prison officials locked as many as ten inmates in a cell. Amended Complaint, Document 24, at 8, ¶ 24. The Plaintiffs further claim that the Defendants failed to protect them from violence, did not provide them with drinking water or working toilets for three days, used excessive force upon these inmates, destroyed the inmates' personal property, and denied them medical care. *Id.* at ¶ 25. Finally, the Plaintiffs claim that many of them were charged and convicted of rules infractions based upon false and inaccurate evidence. *Id.* The Defendants deny most of these allegations, but admit that they emptied several cells of personal property. Answer, Document 29, at 3, ¶ 25.

### HISTORY AND PURPOSE OF SUMMARY JURY TRIALS

In the past fifteen to twenty years, alternative dispute resolution techniques have become more prevalent in the federal courts. In 1980, The Honorable Thomas D. Lambros of the United States District Court for the Northern District of Ohio created the summary jury trial as a method to resolve disputes. *Summary Jury Trial,* 103 F.R.D.

461, 463 (1984). Often parties hesitate to settle prior to trial because they want to have the opportunity to present their respective cases to a jury. Judge Lambros found that a summary jury trial would allow parties to have their day in court without costing them an exorbitant amount of money. As Judge Lambros stated,

> It occurred to me that if only the parties could gaze into a crystal ball and be able to predict, with a reasonable amount of certainty, what a jury would do in their respective cases, the parties and counsel would be more willing to reach a settlement rather than going through the expense and aggravation of a full jury trial.

*Id.* at 463.

The summary jury trial is an abbreviated jury trial without the presentation of live evidence. The attorneys present the evidentiary portion of the case, rather than presenting live testimony. The Court requires that the clients or the officers of the clients, who have authority to negotiate a settlement, attend the summary jury trial. Additionally, the Court holds normal *voir dire,* allows the attorneys to choose a jury of six people, gives introductory and closing jury instructions, and allows the parties to give both opening statements and closing arguments. Throughout the summary jury trial, the Court follows the formalities of a normal trial to impress upon the jury the importance of the proceedings.[1] At the conclusion of the summary jury trial, the Court then releases the jury to deliberate as a normal jury would. In deliberation the jury has two objectives: 1) to determine liability; and 2) to determine the amount of damages, irrespective of whether it found liability. Usually, the entire proceeding does not last more than two days. Thus, the summary jury trial accurately reflects a jury trial but is more efficient and provides a settlement barometer for the parties.

In September 1984, the United States Judicial Conference recognized the value of a summary jury trial as a means of resolving

---

1. The Court, however, does not mislead the jury into believing the proceedings are an actual trial. From the beginning, we emphasize that the proceedings are a device to assist the parties in resolving complicated and time consuming litigation. Furthermore, throughout the proceedings the Court stresses to the jurors the import of their duty.

potentially lengthy civil jury cases, and thus, passed a resolution encouraging their use. *Reports of the Proceedings of the United States Judicial Conference* 88 (September 1984). In 1990, Congress enacted The Civil Justice Reform Act of 1990 ("the Act"), whereby it created an experimental period for courts to attempt and reduce cost and delay in the federal judicial system. In the Act, Congress emphasized the importance of courts utilizing methods of alternative dispute resolution. In fact, the Act states at 28 U.S.C. § 473(a)(6):

> (a) In formulating the provisions of its civil justice expense and delay reduction plan, each United States district court, in consultation with an advisory group appointed under section 478 of this title, shall consider and may include the following principles and guidelines of litigation management and cost and delay reduction:
> (6) authorization to refer appropriate cases to alternative dispute resolution programs that—
> (B) the court may make available, including mediation, minitrial, and *summary jury trial.*

(emphasis added).

This Court has conducted a number of summary jury trials since the early 1980's and has found them to be highly successful in resolving complex litigation. Between July 26, 1983, and March 19, 1996, this Court scheduled 131 summary jury trials. Of those, 106 settled prior to the summary jury trial, and 16 settled after the summary jury trial. Six cases settled in the middle of the actual trial, and three were tried to completion. This Court tried two of the three cases that went to completion, and both of those cases had the same result as the summary jury trial. The 16 summary jury trials that resulted in settlement took 49 days to try. The parties estimated that if those 16 cases

were tried on the merits it would have taken a total of 450 days. Therefore, in addition to the savings recognized by the individual litigants, the use of the summary jury trial has significantly reduced administrative, jury and other related costs.[2]

Other courts have had similar experiences. For example, in the Western District of Oklahoma, the courts held 187 summary jury trials between 1983 and 1989. Of those, 70 settled prior to the summary jury trial and 79 settled after the summary jury trial. Donovan Leisure Newton & Irvine, *ADR Practice Book* 40 (John H. Wilkinson, Esq. ed., Cum.Supp.1992). Additionally, Judge Lambros found that of the 150 cases he assigned to a summary jury trial, over ninety percent of them settled. Thomas D. Lambros, *The Federal Rules of Civil Procedure: A New Adversarial Model For A New Era,* 50 U.PITT.L.REV. 789, 800 (1989). Finally, studies have found that approximately sixty-four percent of state lawyers and fifty-three percent of federal lawyers consider the summary jury trial verdict to reflect true trial results. James J. Alfini, *Summary Jury Trials in State and Federal Courts: A Comparative Analysis of the Perceptions of Participating Lawyers,* 4 OHIO ST.J. ON DISP.RESOL. 213, 228 (1989).

The summary jury trial is an innovative settlement mechanism with a high success rate. The procedure conserves judicial resources[3], promotes efficiency, saves time and money for the parties, and most importantly provides an accurate reading of what will actually happen at trial. In complex trials, such as this one, the Court encourages the parties to set aside two to three days for a summary jury trial. As discussed below, this case is highly unusual, and a summary jury trial will not only aid the parties but will alleviate various other concerns the Court has with this trial.

---

2. For example, in 1995, the United States District Court for the Southern District of Ohio, Western Division in Cincinnati, had 224 trial days at a total cost of $211,449.62. Kimberly A. Schulte, Jury Deputy, *Jury Statistics for the Southern District of Ohio, Western Division, Cincinnati* (1995). The average cost per jury trial day in 1995 was $943.97. *Id.* As noted previously, summary jury trials have saved this Court

over 400 trial days. Thus, the savings in jury costs alone are significant.

3. Judge Lambros found that in the Northern District of Ohio taxpayers saved in excess of $90,000.00 in juror cost alone between 1980 and 1986. Thomas D. Lambros, *The Federal Rules of Civil Procedure, A New Adversarial Model for a New Era,* 50 U.PITT.L.REV. 789, 801 (1989).

## DISCUSSION

### I. Court's Authority to Mandate Summary Jury Trials.

■ On February 1, 1996, the Court scheduled a summary jury trial in this case for June 6, 1996. The Defendants have now moved for an order vacating the summary jury trial.[4] The Defendants rely on a recent decision of the Sixth Circuit, which held that "the provisions of Rule 16, as amplified by the Commentary Committee, do not permit compulsory participation in settlement proceedings such as summary jury trials." *In re NLO, Inc.*, 5 F.3d 154, 157 (6th Cir.1993). For the following reasons, we conclude that *Day* has been effectively overruled by Rule 16 as amended December 1, 1993.[5] First, the Sixth Circuit analyzed the district court's power to order a summary jury trial under Rule 16 as it appeared prior to the December 1, 1993, amendment. The Sixth Circuit did not address the district court's authority to order summary jury trials under Rule 16 as amended. Rule 16, as amended December 1, 1993, contains some significant, if not somewhat subtle, changes relevant to the district court's authority in this area.

Rule 16, as amended, states in pertinent part,

**4.** The Court finds it curious that just a few months ago the Attorney General for the State of Ohio argued the exact opposite position from which she is now advocating. In *State of Ohio v. Louis Trauth Dairy, Inc., et al.*, Case No. C–1–93–533, the Attorney General argued that this Court could mandate the parties to participate in a summary jury trial. *See id.*, Document 493 at 4 ("Clearly, under the amended Rule 16(c) and Local Rule 53.1, the Court is free to choose whichever method of alternative dispute resolution procedures it deems appropriate, *including* compulsory summary jury trials.") (emphasis in original). Therefore, the Attorney General's current position is completely and diametrically opposed to the position she took in *Trauth Dairy*. The Attorney General fails to explain her new found position.

**5.** The Sixth Circuit also addressed whether under the court's inherent power it could order a summary jury trial notwithstanding a party's objection. *See NLO*, 5 F.3d at 158. The court held that "[r]eliance on the pure inherent authority of the court [to justify mandatory summary jury trials] is ... misplaced." *Id.* Our decision, however, is based solely on the authority expressly provided by congress under Rule 16 as amend-

**(c) Subjects for Consideration at Pretrial Conferences.** At any conference under this rule consideration may be given, *and the court may take appropriate action*, with respect to

\* \* \* \* \* \*

(9) settlement and the use of special procedures to assist in resolving the dispute *when authorized by statute or local rule* [.]

Fed.R.Civ.P. 16(c)(9) (as amended December 1, 1993). The old Rule 16 did not contain the reference to local rule authorization, nor did it contain the reference to "appropriate" action.[6] Furthermore, the advisory committee's note states in unambiguous terms that

[t]he primary purpose of the changes in subdivision (c) are to ... eliminate questions that have occasionally been raised regarding the authority of the court to make *appropriate orders* designed either to facilitate settlement or to provide for an efficient and economical trial. The prefatory language of this subdivision is revised to clarify the court's power to enter *appropriate orders* at a conference *notwithstanding the objection of a party*.

\* \* \* \* \* \*

ed, and thus *NLO* continues to be binding precedent with respect to its analysis of the district court's inherent authority. *See* Fed.R.Civ.P. 16, Advisory Committee notes (amended December 1, 1993) ("rule [16] does not attempt to resolve the questions as to the extent a court would be authorized to require such proceedings [i.e., summary jury trials] as an exercise of its inherent powers.").

**6.** Rule 16, provided in pertinent part,

(c) **Subjects to be Discussed at Pretrial Conferences.** The Participants at any conference under this rule may consider and take action with respect to

\* \* \* \* \* \*

(7) the possibility of settlement or the use of extrajudicial procedures to resolve the dispute;

\* \* \* \* \* \*

(10) the need for adopting special procedures of managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems; and
(11) such other matters as may aid in disposition of the action.

The Rule acknowledges the presence of statutes and local rules or plans that may authorize use of some of these procedures [mini-trials, summary jury trials, mediation, etc.] *even when not agreed to by the parties.*

Fed.R.Civ.P. 16(c), advisory committee's note (emphasis added) (internal citations omitted).[7] As the Sixth Circuit observed, the "Supreme Court has established that 'in ascertaining [the] meaning [of the Rules] the construction given to them by the Committee is of weight.'" *NLO,* 5 F.3d at 157 (quoting *Mississippi Pub. Corp. v. Murphree,* 326 U.S. 438, 444, 66 S.Ct. 242, 246, 90 L.Ed. 185 (1946) (alterations added by the Sixth Circuit)). Thus, under the plain meaning of Rule 16 as amended, this Court has the authority to "take appropriate action" with respect to "special procedures [i.e. summary juries trials] to assist in resolving [a] dispute[,]" Fed.R.Civ.P. 16(c), (c)(9), "notwithstanding the objection of a party[ ]," *Id.* at advisory committee's note, "when authorized

Fed.R.Civ.P. 16.

**7.** We note that the Advisory Committee also cautioned that "[o]f course settlement is dependant upon agreement of the parties and, indeed, a conference is *most* effective and productive when the parties participate in a spirit of cooperation...." Fed.R.Civ.P. 16(c), Advisory Committee notes (emphasis added).

**8.** Local Rule 53.1's approach is not unique. First, 28 U.S.C. § 471 provides in relevant part,

**Requirement for a district court civil justice expense and delay reduction plan**
There shall be implemented by each United States district court, in accordance with this chapter, a civil justice expense and delay reduction plan. The plan may be developed by such district court or a model plan developed by the Judicial Conference of the United States.
Additionally, 28 U.S.C. § 473 provides in pertinent part,
(a) In formulating the provisions of its civil expense and delay reduction plan, each United States district court, in consultation with an advisory group appointed under section 478 of this title, shall consider and may include the following principles and guidelines of litigation management and cost and delay reduction:
\*    \*    \*    \*    \*    \*
(6) authorization to refer appropriate cases to alternative dispute resolution programs that—
(A) have been designated for use in a district court; or

by ... local rule." *Id.* at subdivision (c)(9). *See also, Colgrove v. Battin,* 413 U.S. 149, 157–62, 93 S.Ct. 2448, 2453–53, 37 L.Ed.2d 522 (1973) (holding that the Constitution does not deny courts the authority to utilize reasonable procedural flexibility and innovation under the Rules; "[n]ew devices may be used to adapt the ancient institution to present needs and to make of it an efficient administration of justice.") (citations omitted).

Southern District of Ohio Local Rule 53.1 states in full,

### ALTERNATIVE DISPUTE RESOLUTION

The Court may, *in its discretion,* assign any civil case for a *summary jury trial,* mandatory, non-binding arbitration hearing, settlement week conference, or other alternative method of dispute resolution.[8]

It is readily apparent, therefore, that under Rule 16 as amended, considered in conjunction with Local Rule 53.1, it is within this Court's authority to *order* the parties in a civil action to participate in a summary jury

(B) the court may make available, including mediation, mini-trial, and summary jury trial.
In its **Model Civil Justice Expense and Delay Reduction Plan,** dated October 1992, the Judicial Conference of the United States provided the following model approaches regarding the assignment of cases for summary jury trial:
*Alternative # 1—Massachusetts*
A. The Judicial Officer may convene a summary jury trial:
1. With the agreement of all parties, either by written motion or their oral motion in court entered upon the record, or
2. Upon the judicial officer's determination that a summary jury trial would be appropriate, *even in the absence of the agreement of all the parties.*
\*    \*    \*    \*    \*    \*
*Alternative # 2—Ohio Northern*
A. Eligible Cases. Any civil case triable to a jury *may be assigned* for a summary jury trial.
B. Selection of Cases. A case may be selected for summary jury trial:
1. By the Court at the Case Management Conference; or
2. At any time
a. *By the Court on its own motion;*
b. By the Court on the motion of *one* of the parties; or
c. By stipulation of all parties.
\*    \*    \*    \*    \*    \*
**Model Civil Justice Expense and Delay Reduction Plan,** at 74–75 (1992) (emphasis added).

trial, notwithstanding the objection of a party. *See also,* Lucille M. Ponte, *Putting Mandatory Summary Jury Trial Back on the Docket: Recommendations on the Exercise of Judicial Authority,* 63 FORDHAM L.REV. 1069, 1093–94 (1995) ("More importantly, the December 1993 amendments have diminished confusion over the meaning of Rule 16. These changes have put much of the court debate over mandatory [summary jury trials] and other forms of mandatory [alternative dispute resolution] to rest.... Not only may courts consider [summary jury trials], but courts may compel participation under statute, local rules or local plans."). We conclude that this holding does not run afoul of *NLO* because that holding addressed exclusively the pre–1993 amendment to Rule 16 and not Rule 16 as amended.

## II. Both Parties Will Benefit from a Summary Jury Trial.

■ While the Court has the power to order a summary jury trial, an issue remains whether the Court should order a summary jury trial in this case. The Defendants argue that a summary jury trial will not accurately reflect the trial in this instance because the summary jury trial will not have the "integral" human element in this case. We disagree.

The Plaintiffs claim that they suffered various constitutional violations before, during and after the SOCF riot in April 1993. Specifically, the class alleges that the Defendants acted with deliberate indifference to their constitutional rights. In *Farmer v. Brennan,* — U.S. ——, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the Supreme Court held that "a prison official cannot be found liable under the Eighth Amendment for denying inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw from that inference." *Id.* at ——, 114 S.Ct. at 1979. In this case, the question is whether the prison officials knew of the risks and disregarded them. *See id.* at ——, 114 S.Ct. at 1981 ("Whether a prison official had the requisite knowledge of a substantial risk [is] a question of fact subject to a demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious."). While prisons are dangerous places, this does not absolve prison officials from their duties. "[T]he Eighth Amendment to the Constitution mandates that prison officials maintain humane conditions of confinement and take reasonable measures to guarantee the safety of inmates. Their duty *includes* protecting prisoners from *violence at the hands of other prisoners:* '[H]aving stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.'" *Taylor v. Michigan Dep't of Corrections,* 69 F.3d 76, 85 (6th Cir.1995) (emphasis added) (quoting in part *Farmer,* — U.S. at ——, 114 S.Ct. at 1977).

The Defendants argue that a summary jury trial will not allow the jury to understand that the Defendants took the actions they did because the Plaintiffs are allegedly "violent, predatory men." Document 118 at 4. We disagree. First, the Court will preserve the human element by requiring the class representatives and the individual Defendants to attend the trial. Second, the Defendants will be allowed to explain the atmosphere at the prison before, during and after the prison riot. Third, the Defendants can present any evidence they have obtained about the difficulties of managing a maximum security prison. Finally, a summary jury trial is ideal for this type of situation because it will allow both the Plaintiffs and the Defendants to accurately portray the situation at SOCF without being responsible for transferring every prisoner witness to the trial. This will substantially cut costs and preserve the requisite safety in the courtroom.

After reviewing the State's document, the Court believes the State misunderstands the nature of the summary jury trial. The summary jury trial is not binding upon the parties. Rather, as explained above, the summary jury trial is a settlement technique that

398

will help the parties better understand how a jury will evaluate the case, and hopefully will lead to a settlement of this class action.

Furthermore, the Court finds that even if the summary jury trial did not result in a settlement, it would force the parties to timely prepare for trial. As noted in our companion order, the Court is concerned about the delays in this case. The Court must take account of the public's interest in litigation of this kind. The citizens of Ohio remain very concerned about the situation at SOCF. Therefore, it is important that the citizens of Ohio see some progress in this case. A summary jury trial will benefit everyone.

## CONCLUSION

Accordingly, the Court DENIES the Defendants' motion to vacate the summary jury trial.

SO ORDERED.