**In the Matter of SARGEANT FARMS, INC., Debtor.**

**Bankruptcy No. 97–16543–8B2.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Sept. 3, 1998.

844

Alberto F. Gomez, Morse, Berman, and Gomez, Tampa, FL, for debtor.

Adelaide Few, United States Attorneys Office, Tampa, FL, for Farm Service Agency.

## ORDER ON JOINT MOTION REQUESTING COURT SELECTION OF APPRAISER AND MEDIATOR PER COURT ORDER

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for consideration upon the Joint Motion by the Debtor and the United States of America (Farm Service Agency, f/k/a Farmer's Home Administration; Department of Agriculture), a secured creditor in this Chapter 12 case, requesting this Court select a mediator and an appraiser to facilitate resolution of various issues herein, including, but not limited to, valuation of the property of the Debtor.

On May 28, 1998, this Court entered an Order stating that, with the mutual agreement of the parties, a mediator and an appraiser should be selected regarding the Debtor's Motion to Value the Farm Service Agency's secured claim. Pursuant to that Order, the parties were to select a mediator and an appraiser. If they could not do so, they would provide the Court with the names and credentials of various mediators and appraisers and the Court would make the selection from the lists of candidates. The instant Motion seeks such judicial resolution of the impasse between the parties.

All should remember that mediation within the bankruptcy context is relatively new. In 1988, a pilot program dealing with mediation began in the Southern District of California. Subsequently, this Court, upon reviewing the Federal Judicial Center's publication on that pilot program instituted its own mediation program. *See* Hartwell and Bermant, *Alternative Dispute Resolution in Bankruptcy Court: The Mediation Program in the Southern District of California,* (Federal Judicial Center 1988). For more extensive discussion of mediation in bankruptcy and in this Court, see *6 Norton Bankr. Law & Prac. 2d,* § 146:2; Alternative Dispute Procedures (1998); Mabey, Tabb and Dizengoff, *Expanding the Reach of Alternative Dispute Resolution in Bankruptcy: The Legal and Practical Bases for the Use of Mediation and the Other Forms of ADR,* 46 S.C. L.Rev. 1259 (Summer 1995). *See also* Miller, *The Changing Face of Chapter 11: A Reemergence of the Bankruptcy Judge as Producer, Director, and Sometimes Star of the Reorganization Passion Play,* 69 Am. Bankr. L.J. 431, 436 (1995). Historically, the major issue associated with the use of mediation in federal courts and particularly bankruptcy courts, has been the authority of such courts to create a mediation/alternative dispute resolution process and, ultimately, require litigants to participate in same.

### AUTHORITY

In 1906, Roscoe Pound articulated what has now become a continuing concern over the various mechanisms for resolving disputes in the judicial system. Roscoe Pound, *The Causes of Popular Dissatisfaction with the Administration of Justice,* 46 Judicature 55 (1962) (reprinted in 35 F.R.D. 273 (1964)). In 1976, the National Conference on the Causes of Popular Dissatisfaction with the Administration of Justice (National Conference) met in St. Paul, Minnesota.[1] The National Conference was sponsored by the Judicial Conference of the United States, the Conference of [State Court] Chief Justices, and the American Bar Association. Revisiting the concerns of Pound, one of the key inquiries at the National Conference was the use of alternative dispute resolution ("ADR") methods in the judicial system. In 1990,[2]

---

1. Major addresses delivered at the National Conference are reprinted in 70 F.R.D. 79 (1976).

2. During the 84 years between Roscoe Pound's expression of concern and the Judicial Improvement and Access to Justice Act (Pub.L. No. 100–702, 102 Stat. 4642 (1988)), there has been an apparent, but slow, recognition by members of the bar and the judicial system of the importance

the *Report of the Federal Courts Study Committee* 47, 83 (Fed.Cts. Study Comm.), Apr. 2, 1990, recommended Congress specifically authorize federal courts to establish local rules requiring parties to participate in ADR procedures. That same year, the Civil Justice Reform Act of 1990, 28 U.S.C.A. §§ 471–482 (Pub.L. No. 101–650, 104 Stat. 5089 (1990)) was enacted, requiring district courts to develop "a civil justice expense and delay reduction plan." The district courts have accordingly formulated these plans which include an ADR component. *See* 28 U.S.C. § 473(a)(6); *Use of Alternative Dispute Resolution Procedures Increase,* Court Admin. Bill 2 (Admin. Off. of the U.S. Cts.), Feb. 1992; Dayton, *The Myth of Alternative Dispute Resolution in the Federal Courts,* 76 Iowa L.Rev. 889 (1991). In conjunction with the district courts' efforts, the Administrative Office of the U.S. Courts and the Federal Judicial Center are evaluating the existing ADR procedures in the federal courts.

The Judicial Improvements and Access to Justice Act (Pub.L. No. 100–702, 102 Stat. 4642 (1988)) ("the Act"), providing for the use of arbitration in the district courts, makes a general reference to bankruptcy. Section 651 (28 U.S.C.) states "[e]ach United States district court described in Section 658 may authorize by local rule the use of arbitration in any civil action, including an adversary proceeding in bankruptcy."[3] *See also* 28 U.S.C. § 652(a)(1)(A).

While the language of the Act may not appear all-encompassing, it does authorize the use of ADR in bankruptcy, *inter alia* adversary proceedings. Further, nothing in the Act limits the federal courts' rule-making powers as to an alternative dispute resolution process. Therefore, it appears at least with-

in the bankruptcy context, a non-binding court-annexed ADR process is authorized.

The rule-making power of the federal judiciary has a direct nexus to the authority of the courts to use court-annexed mediation. The previous Federal Rule of Civil Procedure 16(c)(7) was a major legal predicate upon which authority for court-annexed mediation has been historically found: "The participants at any [pretrial] conference under this rule may consider and take action with respect to the possibility of settlement or the use of extra-judicial procedures to resolve the dispute." Federal Rule of Bankruptcy Procedure 7016 has adopted that language in full. *See generally Federal Reserve Bank of Minneapolis v. Carey–Canada, Inc.,* 123 F.R.D. 603 (D.Minn.1988); *Arabian American Oil Co. v. Scarfone,* 119 F.R.D. 448 (M.D.Fla.1988); *McKay v. Ashland Oil Inc.,* 120 F.R.D. 43 (E.D.Ky.1988); *Local 715, United Rubber, Cork, Linoleum and Plastic Workers of America v. Michelin America Small Tire,* 840 F.Supp. 595 (N.D.Ind.1993); *Carroll v. Jaques,* 926 F.Supp. 1282 (E.D.Tex.1996). The Amended Rule 16(c)(9) now makes more explicit the intent to allow the use of Alternative Dispute mechanisms.

Early on, the Court of Appeals for the Seventh Circuit adopted a bifurcated view of the authority of the federal judiciary to allow mandatory ADR. In *Strandell v. Jackson County, Ill.,* 838 F.2d 884 (7th Cir.1987), a district judge was not specifically authorized by Rule 16 to require a litigant to participate in summary jury trial. In *G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.,* 871 F.2d 648 (7th Cir.1989) (*rehearing en banc*) (6–5 decision), the Court determined Rule 16 authorized a trial court to require a corporate representative with settlement authority

---

of ADR. *See generally Haworth, Inc. v. Steelcase, Inc.,* 1992 WL 457284, 25 U.S.P.Q.2d 1036, No. 4:85–CV–526 (W.D.Mich. Aug. 11, 1992). Recognition of ADR by other entities has developed with more deliberate speed. *See Pioneers in Dispute Resolution: A History of the American Arbitration Association on Its 65th Anniversary (1926–1991),* Am.Arb. Ass'n 1991.

**3.** Section 651 (28 U.S.C.) speaks only to arbitration, possibly because that ADR process was one of the main mechanisms utilized by the district courts prior to the Act. However, the term is not

defined. Fed.R.Bankr.P.Rule 9019(c) authorizes arbitration only where the parties stipulate to the arbitration. Without much discussion, only two courts considering the Rule have suggested disfavor with a bankruptcy court's use of arbitration. *See In re Jorgensen,* 66 B.R. 104, 108 (9th Cir. BAP 1986); *In re Dore & Associates Contracting, Inc.,* 43 B.R. 717 (Bankr.E.D.Mich.1984). For a comparative view of arbitration to mediation, see Lomax, *Alternative Dispute Resolution in Bankruptcy: Rule 9019 and Bankruptcy Mediation Programs,* 68 Am. Bankr. L.J. 55 (1994).

to appear at a pre-trial conference and to sanction a party if the person did not appear. *See also Russell v. PPG Industries, Inc.*, 953 F.2d 326 (7th Cir.1992) (voluntary participation in summary jury trial requires parties to abide by ADR rules); *but see In re Stone*, 986 F.2d 898 (5th Cir.1993).

The Sixth Circuit in *Rhea v. Massey–Ferguson, Inc.*, 767 F.2d 266, 269 (6th Cir.1985), found the trial court's referral of a case to mediation under the local rules was permissive and was not violative of the Seventh Amendment's right to jury trial:

> [Appellee] also characterizes Local Rule 32 as violating numerous Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 83 authorizes district courts to 'regulate their practice in any manner not inconsistent with these rules.' The challenged local rule is not inconsistent with Rule 38(b) merely because it interposes an additional step between the jury demand and trial. Nor does the Local Rule require two demands for a jury trial in violation of Rule 39(a). Nor is Local Rule 32 inconsistent with Rules 53 or 72–75, governing referral to masters or magistrates. The mediation panel merely issues a settlement evaluation that has no force unless accepted by the parties. In sum, no flaw requiring this Court to intervene in the district court's practice under Local Rule 32 has been raised in the present suit.

*See, e.g., Cincinnati Gas & Elec. Co. v. General Elec. Co.*, 854 F.2d 900 (6th Cir.1988), *cert. denied sub. nom, Cincinnati Post v. General Elec. Co.*, 489 U.S. 1033, 109 S.Ct. 1171, 103 L.Ed.2d 229 (1989); *Lance, Inc. v. Dewco Services, Inc.*, 422 F.2d 778 (9th Cir. 1970). *See also Arabian American Oil Co. v. Scarfone*, 939 F.2d 1472, 1475 n. 7 (11th Cir.1991); *In re Southern Ohio Correctional Facility*, 166 F.R.D. 391 (S.D.Ohio 1996); Lambros, *The Summary Jury Trial and Other Alternative Methods of Dispute Reso-*lution*, reprinted in 103 F.R.D. 461 (1984); Max, *Bench Manual for the Appointment of a Mediator*, 136 F.R.D. 499 (1991).[4] There is no doubt the 1993 Amendments to Rule 16 facilitated court-annexed mediation. Richey, *Rule 16 Revised, and Related Rules: Analysis of Recent Developments for the Benefit of Bench and Bar*, 157 F.R.D. 69, 80 (1994).

While a general consideration of Federal Rule of Bankruptcy Procedure 7016 or Federal Rule of Civil Procedure 16 appears to open the door for ADR, there remains somewhat of an anomaly. The 7000 series of the Federal Rules of Bankruptcy Procedure applies to adversary proceedings, while Rule 9014 provides that only certain of the 7000 Rules apply to contested matters unless the court otherwise directs. Oddly, Bankruptcy Rule 9014 does not mention Bankruptcy Rule 7016 (pretrials), thus, pretrials might not be conducted in a contested matter unless the court specifically orders a pretrial. Nonetheless, Bankruptcy Rule 9014 would not prevent bankruptcy courts from providing for ADR procedures in any case. Fed. R.Bankr.P. 9029. Presently, the use of Federal Rule of Civil Procedure 26 (Pretrial Discovery Procedure) provides an additional pretrial mechanism from which to launch a court-annexed mediation process.

Additionally, one might look to 28 U.S.C. § 157 which authorizes the bankruptcy court to hear and determine cases referred by the district court. Through that referral authority, one might argue the district court, having implicit power to use ADR, would transfer the authority to employ non-binding ADR procedures.

The ultimate debate has arisen over whether the bankruptcy court can require parties to participate in ADR. The judicial trend is to find such authority, at least as to non-binding ADR.[5] While many of the cases

---

**4.** For four extensive articles on various aspects of ADR in both state and federal courts, see Press, Symposium, *Institutionalization: Savior or Saboteur of Mediation?* 24 Fla St. U. L. Rev. 903 (Summer 1997); Note: *Mandatory Mediation and Summary Jury Trial: Guidelines for Ensuring Fair and Effective Processes*, 103 Harv. L. Rev. 1086 (1990); Menkel–Meadow, *Pursuing Settlement in an Adversary Culture: A Tale of Innova-*tion Co–Opted or "The Law of ADR"*, 19 Fla. St. U. L. Rev. 1 (1991); Bundy, *The Policy in Favor of Settlement in an Adversary System*, 44 Hastings L. J. 1 (1992).

**5.** Bankruptcy Rule 9019(c) permits courts to authorize binding arbitration if the parties agree. *See, e.g.,* Exec.Order No. 12776, 56 Fed.Reg. 55,

set forth here refer to one specific ADR mechanism, no limitation of·authority should be assumed. While general reliance of court authority to mandate ADR based on the court's inherent power to control its docket has been debated, *see Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); *In re NLO, Inc.,* 5 F.3d 154 (6th Cir.1993), rule and statutory authority is now the foundation. *State of Ohio Ex. Rel. Montgomery v. Louis Trauth Dairy,* 164 F.R.D. 469 (S.D.Ohio 1996); *In re Southern Ohio Correctional Facility, supra.* Thus, it is quite apparent the bankruptcy court has the authority and power to promulgate rules associated with court-annexed mediation and, where necessary, to require the parties to participate in same. *See,* Burr, *Building Reform From the Bottom Up: Formulating Local Rules for Bankruptcy Court–Annexed Mediation,* 12 Ohio St.J. on Disp. Res.. 311 (1997).

## PROCEDURES

The mediation procedures implemented herein will be the same as Local Rule 9019–2 of the United States Bankruptcy Court for the Middle District of Florida, as supplemented by the following:

■ Prior to the appointment of any mediator in this case, Debtor and Farm Service Agency informed the Court of their agreement to mediate the issue of valuation of the Debtor's property in which the Government has a secured claim. The parties requested the Court appoint a mediator from a list of mediators recommended by them. Normally, the mediators in bankruptcy cases are chosen randomly from a list of court-appointed mediators. However, if the parties desire to select mediators they may, or if they cannot agree upon a mediator, they may file names and addresses of mediators, ranked by each parties' preference, as they have done herein. The Court will then enter an order selecting a mediator from the parties' lists.

■ Compensation of the mediator is based upon the magnitude and complexity of the proceeding and is borne equally by the parties. If the parties cannot agree to the terms of compensation prior to the mediation, then the Court determines a minimum hourly rate and maximum fees, without prejudice to the mediator to seek further fees and costs if the mediation process so justifies.

■ As promptly as practical after selection, the mediator may schedule a preliminary meeting among the parties and their attorneys or representatives. With the consent of the mediator and the parties, the preliminary meeting may (1) be conducted by the mediator; and (2) be conducted by telephone conference rather than in person, or abbreviated in any manner agreed upon by the parties and the mediator.

■ At the preliminary meeting, the matters that may be considered include, but are not limited to: (A) a detailed statement of claims, damages, defenses, etc., and a statement of issues asserted by each party and positions with respect thereto, and any legal authorities the parties may wish to bring to the attention of the mediator; (B) a stipulation to uncontested facts; (C) the exchange and pre-marking of any documents which each party believes may be offered at subsequent mediation; and (D) the identification of any other matters which may assist all parties and the mediator to a successful resolution.

■ The mediator has the authority to take such steps as may be deemed necessary or desirable to avoid delay and to achieve the goals of a just, speedy, and cost-effective resolution of the matter. Both sides shall cooperate in the exchange of documents, exhibits and information within each party's control if the mediator considers such production to be consistent with those goals. Notwithstanding the Local Rule concerning mediation, the parties may conduct such discovery as is agreed to by all parties provided; however, the mediator may provide for and place such limitations on such discovery as are deemed appropriate during the mediation.

195 (1991); 5 U.S.C. § 581; Dep't of Justice Order No. 1561–92, 57 Fed.Reg. 3640 (1992).

■ At the request of a party, the mediator may order the deposition of or the propounding of interrogatories to such persons or entities who may possess information determined by the mediator to be necessary to a determination of the matter and whose information is not readily available to any of the parties at the time the mediation is being conducted.

■ The Local Rule contains a confidentiality provision, which this Court views as absolute. *See* Fed.R.Evid. 408. Assuming a confidentiality exception may otherwise exist within some confines of the law, this Court does not believe it would apply in the bankruptcy case. Of course, that does not mean evidence otherwise producible cannot be used in any further hearing in the case. However, our particular rule of confidentiality focuses on what the parties and the mediator discuss and present to each other during the ADR process. Nothing should prevent full discussion and absolute candor with the mediator. Thus, the broad scope of the confidentiality rule is appropriate. *See, Willis v. McGraw,* 177 F.R.D. 632 (S.D.W.Va.1998); *Wilson v. Attaway,* 757 F.2d 1227, 1245 (11th Cir.1985).

■ Similarly, this Court adopts the position of the United States Court of Appeals regarding immunity afforded to mediators. *Wagshal v. Foster,* 28 F.3d 1249 (D.C.Cir. 1994); *see also,* Plapinger and Stienstra, *ADR and Settlement in Federal District Courts,* The Federal Judicial Center 191–92; 172 F.R.D. 550 (1996); Joseph, *The Scope of Mediator Immunity: When Mediators Can Invoke Absolute Immunity,* 12 Ohio St.J. on Disp. Resol. 629 (1997). Under our Local Rule, there are no communications between the Court and the mediator except the filing of the mediator's report with the Clerk of the Bankruptcy Court. If the mediation is satisfactory, the parties shall file a motion to compromise controversy under Bankruptcy Rule 9019, and if unsatisfactory, the particular contested matter will be set for trial or for pretrial discovery conference under Federal Rule of Civil Procedure 26.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Robert Stokes, Esq., be, and

he is hereby, appointed to serve as the Mediator, in accordance with Rule 9019–2 of the Local Rules of the United States Bankruptcy Court for the Middle District of Florida. It is further

ORDERED, ADJUDGED AND DECREED that Stanley B. Reed be, and he is hereby, appointed to serve as Appraiser in this matter. Reasonable fees are to be paid upon application and Order of this Court. It is further

■ ORDERED, ADJUDGED AND DECREED that the Mediator shall be entitled to a compensation of $175.00 an hour, not to exceed $10,000, to be jointly paid by the parties upon the termination of the mediation. It is further

ORDERED, ADJUDGED AND DECREED that the parties be, and they are hereby, directed to furnish a copy of all documents associated with this matter, together with a Statement of Mediation Position (Official Form No. 5), to the Mediator and the opposing party within fifteen (15) days from entry of this Order. The Statement of Mediation Position shall not be filed with the Court. It is further

ORDERED, ADJUDGED AND DECREED that the Court reserves ruling in this matter until such time as the Mediator has filed the Mediator's Report and Completion of Mediation.